### ROSENTHAL v. UNITED STATES.
### No. 8828.

Circuit Court of Appeals, Eighth Circuit.
Dec. 22, 1930.

Oscar Strauss, of Des Moines, Iowa (A. J. Myers, of Des Moines, Iowa, on the brief), for appellant.

B. E. Rhinehart, U. S. Atty., of Anamosa, Iowa (D. C. Browning, Asst. U. S. Atty., of Sioux City, Iowa, on the brief), for the United States.

Before STONE and VAN VALKEN-BURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant, Rosenthal, was engaged in the transfer and storage business at Sioux City, Iowa. His main warehouse was located at 11 West Third street in said city. November 10, 1928, he rented another warehouse, known as the Rathbun warehouse, located at 21 West Third street, for a period of one year, with an option for four years more, and at a monthly rental of $150. He was to take possession December 1, 1928. At the time this lease was made the Rathbun warehouse was in the hands of a receiver, and was not a going concern. After taking possession on December 1st, appellant proceeded to remove from the Rathbun building, to his main warehouse, a quantity of furniture which was stored on the third floor of the former building. This removal which, it appears, left the third floor of the Rathbun building vacant, was completed December 5, 1928. About December 15th appellant and one Gill looked over the Rathbun warehouse. December 20th a lease was prepared at appellant's direction whereby appellant rented to Gill "for the storage and shipping of flour, mill feeds, farm supplies and groceries" the entire third floor of the Rathbun building, together with office space on the second floor, approximately 25 by 30 feet. The term of the lease was two years, with a renewal option. The rent reserved was $115 per month. This lease was signed December 26, 1928. January 21, 1929, the Rathbun warehouse was raided by prohibition and police officers and an extensive distilling plant was found. The space actually occupied by Gill at this time was the entire upper floor, a part of the second floor, and a space twelve by forty feet in the basement. Openings had been cut in the second and third floors to accommodate what might be termed a shaft about eight by ten feet in dimension. In the basement was a large boiler, tanks, and other distilling apparatus extending from the basement through the openings described to the third floor of the building. On the third floor were twelve large vats, five of them containing fermenting mash. These vats were arranged in rows, and platforms five feet high were piled with sugar. About four hundred sacks of sugar were found in the building. These vats were purchased in Minnesota. There is testimony, denied by appellant, that, when these vats arrived in Sioux City, the trucks on which they were brought in were unloaded with the assistance of appellant's men and placed in the Rathbun warehouse. The first carload of sugar reached Sioux City December 21, 1928. Appellant, being notified by the railroad, directed this car to be sent to his main warehouse, for the assigned reason that the Rathbun warehouse was not yet fully repaired and cleaned. A second car of sugar was received soon after and was sent to the Rathbun warehouse at appellant's direction. Both these shipments were sent in care of the Rosenthal warehouse. Appellant claims to have exercised no supervision over the extensive "repairs" or physical changes made in his building, nor to have had any knowledge or suspicion of the character of business carried on therein. Molasses and coke were hauled to the Rathbun building by appellant's men in appellant's trucks, the molasses in a piano wagon with the sides closed. No records were kept of the hauling of these

goods. Appellant testified that these hauls were marked cash jobs, and that the drivers turned the money over to him in cash.

June 1, 1929, an indictment was returned and filed in the United States District Court for the Northern District of Iowa charging appellant, Gill, Albert Larson, and Hiram Torbet with conspiracy to violate the National Prohibition Act by the illicit manufacture of intoxicating liquor for beverage purposes. At the trial under this indictment appellant was convicted, and from the judgment entered this appeal is taken.

The assigned errors relied upon in brief and argument are five in number. The first two have to do with the instructions to the jury. They charge (1) that the court imposed upon the defendant a greater burden to show his innocence than the law recognizes; and (2) that the court failed to instruct the jury fully on all the principles of law which govern or control the substantial facts in evidence. A third assignment is that the circumstances were as consistent with innocence as with guilt, and therefore appellant was entitled to a verdict of acquittal by direction of the court. It is further complained (4) that "where four are indicted for conspiracy and no severance of the cases is had, two found not guilty, the third convicted, and the fourth never apprehended, tried, convicted, or dead, the conviction and punishment of the third is unlawful"; and (5) that the argument of the district attorney to the jury was an appeal to race prejudice, and a reversal is demanded for that reason.

Taking up the assignments relating to the court's charge, the first is directed to language embraced within slightly more than two pages of the printed record, which appellant charges is unfair and prejudicial to the appellant, argumentative, and an invasion of the province of the jury. The charge of the court upon reasonable doubt and presumption of innocence is unexceptionable. Moreover, the entire charge reiterates again and again the burden of proof imposed upon the government, and throws about the defendant all the safeguards which the Constitution and laws guarantee. The language complained of consists of a passionless recital of the salient points in evidence, and in no respect transcends the limits of legitimate comment.

With respect to the third assignment mentioned, it should be said that there was substantial evidence introduced by the government from which the guilt of appellant could legitimately be found. In such case

the question is properly one for the jury. The fact that a defendant's evidence may traverse that of the prosecution does not necessarily alter the situation, if the government has made a sufficient showing on its part. The jurors were told that "the evidence on the whole must not only be consistent with the defendant's guilt, but must, when fully and fairly considered, exclude every reasonable hypothesis of his innocence."

An additional complaint is that, where the jury, after being instructed and having retired, returned for additional instructions "the appellant was fairly entitled to have the jury instructed upon its request, that a landlord is not guilty of conspiracy to violate the National Prohibition Act merely because he has knowledge that liquor is being manufactured on the premises and he does not stop it or take some action towards that end."

The request for additional instruction came in the following language:

"A Juror: May it please the Court, the question that we were wondering about is this, in the event that we find the defendant entered into this contract in good faith, but subsequently to entering into the contract acquired knowledge that there was illicit liquor being manufactured on the premises, but for some reason refused to acquaint himself further with it, entirely stayed away from the premises, even though he did go there and satisfied himself that there was liquor being manufactured there, would that constitute and establish conspiracy? That is the question I believe in the minds of the jurors that they are not certain of. Would that justify them bringing-in a verdict of guilty? "

The court replied thus:

"The charge in this case is that of conspiracy to commit an offense against the United States, namely, the manufacture of intoxicating liquor for beverage purposes in violation of the National Prohibition Act. Conspiracy as I have heretofore told you is an agreement or understanding between two or more persons to do an unlawful thing, or cause an unlawful thing to be done thereafter. The conspiracy must have been formed, the understanding arrived at, before the offense which is the object of the conspiracy is committed. When you consider the acts done by the persons charged with the conspiracy after the conspiracy was formed, if such conspiracy was formed, you consider them for the purpose of throwing light upon and revealing the previous understanding and agreement. Before you can

convict the defendant you must find that before these acts were committed he had come to an understanding with Gill or Gille, whatever his name may be, and that understanding contemplated that they or some one acting for them would manufacture the intoxicating liquor, but in arriving at that conclusion as I have heretofore told you, you may consider all of the circumstances and facts in evidence in the case as bearing on the question of a previous understanding or agreement and of preconcert of mind between the two parties. The case, as has been heretofore explained to you, is one involving the application of circumstantial evidence, and one of the material questions is whether the circumstances in evidence in this case, establish beyond a reasonable doubt that the defendant Rosenthal and the man Gill or Gille had an agreement before the installation of this still that it should be established and they should manufacture their intoxicating liquor. I don't think I can give you the law any more clearly."

■ The answer was clear and sufficient. It is our judgment that the case was submitted to the jury with exceptional care in the court's charge, and that no error can be predicated upon that submission. At a former trial of this case verdicts of not guilty as to Torbet and Larson were directed by the court. A disagreement resulted as to appellant. Gill, concededly one of the principal defendants, has thus far evaded arrest. At the trial resulting in the judgment from which this appeal was taken, appellant alone was tried. It is contended that until a showing is made by the government that Gill is "forever unavailable" any conviction of appellant is unlawful. If the court must await indefinitely the capture of a fugitive whose whereabouts are unknown, it must often result that one primarily guilty of the offense charged may go unwhipped of justice. The contention must be rejected both upon reason and authority. It frequently happens that a conspiracy is charged with persons unknown, whose ultimate arrest and conviction is neither contemplated nor expected. But, where the evidence shows that more than one person participated in the corrupt understanding, the conviction of a single defendant will be upheld. Browne v. United States (C. C. A. 2) 145 F. 1, 13; Donegan v. United States (C. C. A. 2) 287 F. 641, 648. Feder v. United States (C. C. A. 2) 257 F. 694, 5 A. L. R. 370, holds that, where an indictment charges a conspiracy against two only, if one be acquitted the other must be also. This case presents no conflict with the previous decisions of the same court.

■ Finally, a reversal is prayed because of alleged prejudicial argument on the part of government counsel. In his closing argument the district attorney, referring to the failure of appellant to take cognizance of Gill's action in taking possession of basement space not covered by his lease, said:

"A man grabbing valuable warehouse space from this defendant here, grabbing valuable warehouse space and collecting no rent for it. And that is what he got it for. Isn't that funny? I never knew of a Jew, before that would surrender a piece of a warehouse twelve or fourteen feet wide and forty feet long for nothing. And not only that, but he sawed through the bottom floor a hole 8x10 or 10x12, something like that, and then he built another arrangement up through to the next floor and took possession of that. Never saw it. A man that they would have you believe in one breath was one of the most careful business men that Sioux City possesses and has accumulated a considerable amount of property, and yet he did it without paying any attention to his business.".

With respect to this assignment of error it would be sufficient to say that to this argument no objection was made nor exception preserved. But, at any rate, it is obvious that, in the statement made, the district attorney intended no appeal to race prejudice, nor do we think such was the effect of the language used. Instead, the purpose was to call attention to the inconsistency of appellant's conduct with the recognized business acumen of the Jewish race to which appellant belongs. We do not think this statement was of such a prejudicial nature, in the respect complained of, as to warrant reversal, even though exception had been taken at the time. It follows that the judgment below should be affirmed. It is so ordered.