William Verlon CROSS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18828.

United States Court of Appeals Eighth Circuit.

April 5, 1968.

**361**

Julius C. Acchione, Little Rock, Ark., for appellant.

William F. Sherman, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. McClellan, U. S. Atty., Little Rock, Ark., on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

Appellant William Verlon Cross was charged by indictment, together with an alleged confederate Jerry F. Barrow, of conspiring to possess and pass counterfeit $20 federal reserve notes with intent to defraud in violation of 18 U.S.C. §§ 371 and 472.

The indictment contained five counts, three of which applied to appellant Cross.

Count 1 alleged a conspiracy, including Cross and Barrow; Counts 4 and 5 alleged a passing and uttering by Cross and Counts 2 and 3 applied only to Barrow. Cross, upon a jury trial, was acquitted on Count 4 and found guilty on Counts 1 and 5. Judgment was duly entered on the jury verdicts and Cross received a three-year sentence.

Barrow pled guilty to Count 2 of possessing counterfeit notes, and Counts 1 and 3 were dismissed as to him. He received a two-year sentence and was the principal Government witness in the case against Cross.

The multiple indictment charged in Count 1 that on November 29, 1966 Cross and Barrow conspired with each other and other unknown persons to possess and pass counterfeit $20 notes. Count 4 charged that on that same date Cross passed and uttered a counterfeit $20 note at Wink's Club, Paragould, Arkansas, Count 5 charged that Cross on November 27, 1966 passed and uttered a counterfeit $20 note at Hill's Deep Rock Service Station, Paragould, Arkansas.

On appeal Cross's principal contentions are: (1) insufficiency of the evidence to sustain the conspiracy count conviction (Count 1); (2) insufficiency of the evidence to sustain a conviction on Count 5 of passing and uttering a counterfeit note at Hill's Service Station, and (3) denial of his constitutional right to effective counsel in violation of the Sixth Amendment.

On appeal we take that view of the evidence which is most favorable to supporting the jury verdict; and all reasonable inferences that tend to support the action of the jury must be accepted as established. Koolish v. United States, 340 F.2d 513, 519 (8 Cir. 1965), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724; Smith v. United States, 331 F.2d 265, 278 (8 Cir. 1964), cert. denied, 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34; Koop v. United States, 296 F.2d 53, 54 (8 Cir. 1961).

The evidence produced by the Government relating to the conspiracy charge

consisted primarily of the testimony given by Barrow, an illiterate laborer and lifetime acquaintance of Cross. Barrow met Cross on the morning of November 29, 1966 at Cross's "108 Cafe" in Arbyrd, Missouri, where Cross said that he knew where he could get some "bad money". They agreed that Cross would get the money, and Barrow would help pass it. About 10:00 p. m. that same day, the pair met at the Palmer House (or the Starlight Club which is a similar drinking establishment located in close proximity to the Palmer House) in Senath, Missouri. They drove the short distance to Cross's "108 Cafe" in separate autos, where Barrow parked his car and the pair then drove to Paragould, Arkansas, a distance of about 20 miles, in Cross's 1960 Rambler. Cross said he had a total of $500 in counterfeit $20 notes, twelve of which he gave to Barrow. Cross said the unnamed supplier of the counterfeit notes was to receive 50 per cent and the balance would be split between Cross and Barrow.

The pair proceeded to Wink's Liquor Store and the adjoining Wink's Club, both establishments operated by C. W. Gaskill. Cross told Barrow he was going to "pass one" in Wink's Club. Barrow saw Cross proceed toward the door of the Club, while Barrow went into the Liquor Store. Barrow attempted to "pass" a note to Gaskill, but after the note tore in Gaskill's hands the police were called and Barrow was apprehended shortly after 11:00 p. m.

Approximately two minutes after the police arrived at the Liquor Store, Assistant Police Chief Lloyd Hill, who was also responding to the call, observed a 1960 Rambler with a Missouri license leave the vicinity of the Club and Liquor Store. Barrow was searched and the counterfeit notes he had were confiscated. After the incident with Barrow, Gaskill went into his Club and examined the contents of the cash register where he found a $20 note bearing the same serial number as the one taken from Barrow. The $20 note found in the Club was the subject matter of Count 4, on which Cross was acquitted. The following day Barrow's auto was found parked at the "108 Cafe" by W. H. McClarin of the United States Secret Service, which fact tends to corroborate Barrow's testimony.

Cross argues that while it is true that one person can be convicted of conspiracy with persons unknown, the only evidence establishing such a conspiracy was given by Barrow, which evidence was not sufficient to even convict Barrow of conspiracy. Cross also asserts that the only overt act that could establish the alleged conspiracy was the passing and uttering of the counterfeit $20 note in Wink's Club on which charge the jury acquitted Cross.

The arguments are not persuasive. For conviction under 18 U.S.C. § 371, there must be proof of (1) an agreement; (2) a combination of two or more persons; (3) an unlawful purpose; (4) an overt act committed by one of the conspirators in furtherance of the conspiracy. The requisite elements are present in this case. If the indictment names persons unknown as co-conspirators, and there is evidence to support the charge that one of the two defendants conspired with the unknown persons, his conviction can stand, even though the other defendant was acquitted. United States v. Gordon, 242 F.2d 122, 125 (3 Cir. 1957), cert. denied, 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436; Cf. Rogers v. United States, 340 U.S. 367, 375, 71 S.Ct. 438, 95 L.Ed. 344 (1951); Rosenthal v. United States, 45 F.2d 1000, 1003, 78 A.LR. 1415 (8 Cir. 1930). Here, Barrow was not acquitted of conspiracy; the conspiracy count was merely dismissed. The jury properly could find that Cross conspired with Barrow or with unknown persons, such as the person who supplied Cross with the counterfeit notes. Cross's supplying the counterfeit notes to Barrow was an overt act in furtherance of the unlawful agreement to pass the notes as was Barrow's actual passing and uttering of the note at Wink's Liquor Store. Also, the mere possession of counterfeit notes, with the requisite intent to defraud, is proscribed by § 472.

This Court stated in Bergen v. United States, 145 F.2d 181 (8 Cir. 1944) at pp. 187–188:

"Conviction may rest on proof of the doing of any overt act by any of his co-conspirators for the purpose of effecting the object of the conspiracy, and it is not necessary to conviction that the overt act in itself be one prohibited by law. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L. Ed. 23; Troutman v. United States, 10 Cir., 100 F.2d 628; Kramer v. United States, 245 U.S. 478, 38 S.Ct. 168, 62 L.Ed. 413."

As succinctly stated in United States v. Root, 366 F.2d 377, 383 (9 Cir. 1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784: "Title 18 U.S.C. § 371 does not require 'mission accomplished', only 'mission attempted'. An overt act by the conspirators in an effort to accomplish the mission satisfies the requirement of the statute."

The thrust of Cross's argument goes to the weight of Barrow's testimony, which formed the basis of the Government's case. Chief Hill's testimony that he saw an auto similar to Cross's with a Missouri license plate leave Wink's and the coincidence of the identity of numbers on the notes found on Barrow and the note found in Wink's Club, tend to corroborate the testimony given by Barrow. However, it is not required under the federal rule that the testimony of an accomplice be corroborated, if such testimony is not otherwise incredible or insubstantial on its face. Wood v. United States, 361 F. 2d 802, 804 (8 Cir. 1966), cert. denied, 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439; United States v. Kelly, 349 F.2d 720, 767 (2 Cir. 1965) and cases cited, cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544. Further, Judge Young cautioned the jury that Barrow's testimony

" * * * be received with caution and weighed with great care.

"You should never convict a defendant upon the unsupported testimony of an accomplice, unless you believe the unsupported testimony beyond a reasonable doubt."

The evidence produced by the Government adequately supports Cross's conviction on Count 1, conspiracy.

The general sentence imposed on Counts 1 and 5 was less than that which could have been imposed on either count,[1] and ordinarily we would not consider Count 5, having sustained Count 1. Lawn v. United States, 355 U.S. 339, 359, 362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Atkinson v. United States, 344 F.2d 97, 98 (8 Cir. 1965), cert. denied 382 U.S. 867, 86 S.Ct. 141, 15 L.Ed.2d 106; White v. United States, 330 F.2d 811, 812 (8 Cir. 1964), cert. denied 379 U.S. 855, 85 S.Ct. 105, 13 L.Ed.2d 58; Isaacs v. United States, 301 F.2d 706, 733 (8 Cir. 1962), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58.

However, in view of Cross's further contention that he was denied effective assistance of counsel, we will consider Count 5, under which Cross was convicted of passing and uttering a counterfeit $20 federal reserve note at Hill's Deep Rock Service Station on November 27, 1966. Cross claims the evidence is insufficient to sustain conviction because the counterfeit note on which the charge is based should not have been admitted into evidence. Barrow testified that he and Cross stopped at Hill's Service Station on Sunday evening, November 27, 1966, for the purpose of buying gasoline for Cross's 1960 Rambler. John Stanfill, the only employee at the station at that time, knew Cross and identified him as the person who purchased gasoline there that night with a $20 note that "didn't look good". It was the only $20 note received during that shift and was the only $20 note in the cash register when Stanfill closed the station and cached the collections made by him. When the station

[1]. On Count 1 the maximum sentence that could have been imposed was not more than $10,000 fine, 5 years imprisonment, or both. On Count 5, the maximum could have been not more than $5,000 fine, 15 years imprisonment, or both.

owner, Billy Gene Hill, arrived at work the following morning Stanfill showed him the $20 note and they had some discussion about it. Hill thought "it looked funny" but he retained it and gave it to his mother-in-law in payment of an obligation to her. She in turn, the day after receiving the note, took it to a bank. The bank refused to accept the note and immediately called Hill to take back the $20 note. Hill did as requested and turned the note over to a deputy sheriff the next day, December 3, 1966. The deputy initialed the note at that time and also had Hill initial the note. The deputy then turned the counterfeit note over to W. H. McClarin of the United States Secret Service on December 5, 1966. The note was counterfeit and had the same serial number as the notes taken from Barrow in Wink's Liquor Store on November 29, 1966, and as the note passed in Wink's Club that same night. It also bore the same serial number as a counterfeit note that a waitress testified Cross had passed in the Bootheel Cafe on November 27 in payment of a 5 cent balance due on the purchase of three beers. Cross admits being in the Bootheel Cafe at the time in question but denies that he passed the counterfeit note. Cross also denies that he made the trip with Barrow to Hill's Service Station. Barrow's testimony, however, is corroborated by Stanfill's testimony and identification of Cross. Cross's main assertion, aside from a general denial of being at the filling station, is that there were missing links in the chain of possession of this counterfeit note, pointing out that Hill's mother-in-law and the bank handled the $20 note before Hill initialed it and that neither the mother-in-law or any bank employee was called as a witness to show the chain of custody, thus intimating that the note received in evidence might not be the same note that Cross is charged with passing at the Service Station.

This is a proper jury argument but it is not persuasive, either to us, nor was it to the jury. We think it highly unlikely that the bank or Hill's mother-in-law would have switched this "phony" note in exchange for any note received by the mother-in-law or presented to the bank. The bank refused to process or cash the note and Hill was called immediately and went to the bank for the purpose of taking up the note. Cross's argument goes to the weight of the evidence rather than to the exclusion of it. This particular $20 note received in evidence as the Government's exhibit No. 2 would be admissible, without the Count 5 charge, to prove Cross's fraudulent intent in committing the offenses charged in Counts 1 and 4. Carrullo v. United States, 184 F.2d 743 (8 Cir. 1950). Cross denied any guilty knowledge of the counterfeit notes and any fraudulent intent to pass the notes. The Government's exhibit No. 2 was, therefore, competent and relevant on the question of Cross's intent and, of course, would be competent to substantiate the charge set forth in Count 5. Also relevant was the counterfeit note allegedly passed by Cross in the Bootheel Cafe, which evidence the Court limited in its instruction to the issue of Cross's intent. United States v. Bucciferro, 274 F.2d 540 (7 Cir. 1960), cert. denied, 362 U.S. 988, 80 S.Ct. 1076, 4 L. Ed.2d 1021; United States v. Crowe, 188 F.2d 209 (7 Cir. 1951). The evidence is persuasive that wherever Cross appeared a counterfeit $20 note of the same serial number as those taken from Barrow showed up in the proceeds of the business patronized by Cross, and he in addition is directly connected with the passing of the counterfeit notes with the exception of the note at Wink's Club where the evidence is circumstantial. The evidence is sufficient to justify the submission of the charge contained in Count 5 to the jury.

Cross's final contention is that he was denied his constitutional right to effective counsel. After the close of the presentation of evidence, Cross's counsel, W. B. Howard, made an offer of proof, which was denied by Judge Young, and Howard moved for a mistrial. Howard made the offer in order to be allowed to show by his own testimony, and that of Cross, why certain persons named by de-

fense witnesses in alibi testimony pertaining to Count 1 were not in attendance at the trial. Howard further asserted:

"I did not attempt to develop the case; I did not attempt to interrogate any witnesses or do anything else; and as a matter of fact, told this man [Cross] that I was going to attempt to resign and I did not tell him about the conversation I had had with the Court about it.

"At any rate, I did nothing further except to tell him if he had witnesses that he could get without a subpoena that he had better bring them with him, whether I did or did not represent him."

Howard justified his conduct of Cross's defense in the above incredible fashion with the assertion that he was following a principle he had learned in some twenty years of practice—that of not representing a criminal defendant unless paid in advance. Howard said that shortly after Cross's arrest, he negotiated a contract with Cross's wife whereby he would be paid $2,000 to represent Cross, with the understanding that no work on the case would be done until the fee was paid. After receiving $250, Howard attended the preliminary hearing at which time he made the terms of the contract clear to Cross. When Cross was released on bond but failed to produce cash or assets to secure payment of the fee, Howard claimed to have talked to Judge Young about resigning from the case, but was advised he could not. (The record does not show the nature of the communication between Howard and Judge Young or when it occurred.) Apparently no formal motion to withdraw from the case was filed by Howard, nor did Cross voice any objection or dissatisfaction with having Howard as his counsel. Howard asserted he made a "last ditch" effort to secure his fee, and being unsuccessful did nothing to develop Cross's case.

Howard's offer of proof and motion for mistrial were, as Judge Young noted, somewhat unique in that they were based on his own alleged dereliction in conducting Cross's defense. Judge Young commented in chambers, when denying Howard's motions, that: "Actually, Mr. Howard, you have conducted a most effective defense * * *." "* * * [Y]ou have presented the best defense for any defendant we have had at this criminal term." Cross's appeal brief concedes that Howard's "trial technique was good" and "can even withstand hindsight scrutiny."

However, Cross urges that effective assistance of counsel was not rendered by Howard in that he proceeded to trial without investigation and without preparation, and that he failed to subpoena alibi witnesses or inform Cross how to subpoena witnesses.

As a defense to what transpired on the night of the alleged conspiracy, Cross testified that he drove Barrow to Paragould around dusk (Barrow leaving his car at Cross's cafe because of a bad tire), and left him at the "25 Club" which is next door to Wink's Club and Liquor Store. Cross asserted he then returned to the cafe to help his wife close up, and they then went to the home of Mr. and Mrs. Junior Bell where, along with Rusty Bell and his wife, they watched television from about 8:0 p. m. until about 9:30 p. m. when they went home, arriving shortly before 10:00 p. m. Cross testified he talked with Ray Chandler about 15 to 20 minutes after Chandler brought Cross's sister-in-law to the house shortly after 10:00 p. m.; Cross then retired for the evening. Cross's wife related the same story of the evening's events. Chandler testified as to having the conversation with Cross shortly after 10:00 p. m. The Cross's boarder, Charles T. Pedigo, corroborated Cross's conversing with Chandler, and said he believed Cross did not leave the house after the conversation. Howard, in examining defense witness Chandler and Pedigo, established that he had not talked with them until the day before they testified (the first day of the trial), and that they were appearing without subpoena as "friends" of Cross.

Cross now claims that the failure to subpoena the Bells as alibi witnesses was prejudicial to him, citing Johnson v. United States, 71 App.D.C. 400, 110 F.2d 562 (1940). In *Johnson* a new trial was granted as the defendant's court-appointed counsel negligently failed to produce a witness whose testimony would have corroborated the otherwise "hopeless" and uncorroborated story of the defendant that he committed homicide in self-defense. The testimony of the witness " * * * if believed, was calculated to raise in the minds of the jury a reasonable doubt whether appellant was guilty of murder in the first degree." 110 F.2d at 563. Cross also cites Twiford v. Peyton, 372 F.2d 670 (4 Cir. 1967) where counsel, appointed the day before trial, was denied a continuance on the day of trial when he was first told by defendant of an alibi witness who would also show bias on the part of one of the prosecution's key witnesses; and the Court held defendant was denied effective assistance of counsel.

■ Cross also cites other cases in which it was held that the effective assistance of counsel was not rendered the defendant. Martin v. Commonwealth of Virginia, 365 F.2d 549 (4 Cir. 1966); Pineda v. Bailey, 340 F.2d 162 (5 Cir. 1965); Jones v. Cunningham, 313 F.2d 347 (4 Cir. 1963); MacKenna v. Ellis, 280 F.2d 592 (5 Cir. 1960); Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14 (1945). It is sufficient for our purpose to note that each of the cases involves a factual situation differing from the case at bar to the extent that they do not present the same or similar problem in a similar context. This Court recently restated the applicable general rule in Cardarella v. United States, 375 F.2d 222 (8 Cir. 1967):

"The rule applicable is that a charge of indequate representation can prevail 'only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court.'" [citations omitted] 375 F.2d at 230.

■ Our reading of the trial record confirms Judge Young's comment, and Cross's admission, that Howard's actual trial technique was effective. Howard's representation of Cross was effective enough to obtain an acquittal on Count 4 of the indictment. The record reveals that Howard vigorously and expertly conducted Cross's defense. Proper objections were made and Howard, if anything, was overzealous in impugning the Government's witnesses and in attempting to confuse the jury. The nature of the testimony that would have been offered by the Bells (assuming they would have substantiated Cross's testimony) would not be in the nature of alibi testimony—testimony that Cross was in a different place when the alleged conspiracy was conceived and consummated. The testimony by Barrow about the trip to Paragould with Cross would not be negated, nor his meeting with Cross earlier that day. In short, lack of the Bells' testimony would not prejudice the defendant as in the *Johnson* and *Twiford* cases.

It would appear to us that Howard's offer of proof, which was properly denied, was a "trial tactic" designed to infect the record with error. Further, even if Judge Young refused Howard's request to resign from the case, with the statement that Howard would be appointed counsel if he attempted to resign, this case does not fall within the scope of Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) where counsel was required to represent co-conspirators with conflicting interests, and the court was so advised. Here, Judge Young could rightfully assume that Howard as an attorney and officer of the court would render effective assistance to his client. Nor is there any showing that Cross's lack of funds resulted in antagonism between Cross and Howard to the extent that another attorney should have been appointed. See, United States ex rel. Mitchell v. Thompson, 56 F.Supp. 683, 687 (S.D.N.Y.1944).

Howard is an experienced and able criminal lawyer, who by his own admission has been engaged in the practice of criminal law for twenty years. A reading of the entire record convincingly demonstrates Howard's legal acumen and skill, if not his probity. It is unbelievable that Howard would not step into the Clerk's office to subpoena or otherwise secure the attendance of the Bells if he thought their testimony would be of assistance to Cross. Actually their testimony, if it would be corroborative of Cross's, would not tend to establish Cross's alibi during the crucial period of the ride to the Wink's Club that occurred approximately in the time area of 10:20 to 11:00 p. m. Bells's testimony would only relate to the period of 8:00 to 9.30 p. m. We, however, must realize that the Government could and probably did make mention of this failure to produce the Bells (the jury arguments are not in the record). We cannot on the evidence before us view Howard's actions as other than a diversionary or trial tactic, unrelated to the merits of the case. Howard announced ready for trial at the time the case was called and made no mention of his plan of action nor did he request of the Court the right to subpoena any witnesses at Government expense. His action late in the trial in attempting to testify why he did not subpoena the Bells is subject to severe condemnation as unworthy of a licensed attorney and as an officer of the court. We can sympathize with Howard's desire to collect his fee, but his lack of success in this respect is no reason for his pique disrupting the judicial process. The trial was certainly not a sham or a mockery of justice and in fact was probably, as Judge Young noted, the best tried criminal case of that term.

However, as stated in *Glasser*, supra, "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U.S. at 76, 62 S.Ct. at 467. In view of Howard's own statement that his willful neglect of

duty resulted in Cross's case not being investigated or developed, we hesitate to say on the record before us that no prejudice resulted to Cross and that he had the effective assistance of counsel. We, therefore, remand this case to the District Court for an evidentiary hearing in order that the Court may make a specific finding on whether Cross was denied the effective assistance of counsel, as contemplated by the Sixth Amendment.

If the District Court finds that Cross was not denied effective assistance of counsel this judgment stands affirmed. On the other hand, if the District Court decides that Cross was denied effective assistance of counsel, a new trial should be granted on both counts.

We again express our strong disapproval of any counsel using the methods employed by Howard in representing Cross. Intentional failure to perform the duty owed a client is not an avenue by which counsel can upset the judicial processes. Otherwise, an attorney indifferent to the bounds of judicial propriety could upset any conviction by failing to perform his duty, or by simply so stating. Nor can counsel out of misdirected zeal for acquittal of his client fabricate a defense by asserting his own ineffectiveness when it appears to him that legitimate defenses will be of no avail. Judge Prettyman's statement in Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787 (1958), cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86, is appropriate:

"A lawyer, employed or appointed, is under obligation to defend with all his skill and energy, but he also has moral and ethical obligations to the court, embodied in the canons of ethics of the profession. Mere failure to achieve acquittal is no part of a court's consideration of the work of a trial lawyer. His obligation is to achieve a fair trial, not to see that his client is acquitted regardless of the merits." 259 F.2d at 792.

We suggest that the District Court after concluding the evidentiary hearing

on the effectiveness of counsel to conduct a hearing, after due notice, on whether Howard's name should be removed from the rolls of those attorneys authorized to practice before the United States District Court. If the District Court deems it advisable to hold a hearing and, after an evidentiary hearing, finds that Howard used his own alleged dereliction as a trial tactic or that Howard knowingly and intentionally failed to effectively represent a client, appropriate action should be taken as is deemed fitting by the District Court. We do not desire to pre-judge Howard's case without a hearing; perhaps he has some further explanation of his conduct. Our remarks are made solely on the whole record and we leave to the District Court the appropriate action, if any, that may be warranted under the circumstances.

Remanded with instructions.