**STATE of Missouri, Respondent,**

v.

**Rodger Lee McQUEEN, Appellant.**

**No. 51211.**

Supreme Court of Missouri, Division No. 1.

Feb. 14, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, Clyde Burch, Sp. Asst. Atty. Gen., Kirksville, for respondent.

Hale W. Brown, Kirkwood, for appellant.

HOLMAN, Judge.

Defendant, Rodger Lee McQueen, was charged with the murder (in the first degree) of George Francis. He was found guilty of murder in the second degree and his punishment was fixed by the jury at life imprisonment. See §§ 559.010, 559.020, and 559.030 (all statutory references are to RSMo 1959, V.A.M.S.). Defendant has appealed.

In presenting its case the State relied upon circumstantial evidence. With meticulous care, it presented a large quantity of detailed facts which complied with the strict requirements of a circumstantial case and from which a jury reasonably could have found, beyond a reasonable doubt, that defendant shot and killed George Francis on October 23, 1963. While we will refer briefly to the State's evidence it is not necessary to state it in detail because the defendant subsequently testified and admitted that he shot the deceased on the date heretofore mentioned, but stated that he did so in self-defense after the deceased attacked him.

The dead body of George Francis was discovered at about 8 o'clock p. m. on October 23, 1963, at the apartment in which he lived. His death was shown to have been caused by three gunshot wounds. Three fingerprints of the defendant were found in the room, and the gun found in defendant's possession at the time of his arrest was shown by a ballistics expert to have been the gun from which was fired a bullet found in the body of deceased. There was evidence that the gun was the property of Mary Zoeller. She stated that she kept the gun in her car and that she had discovered it was missing in November 1963. A shirt which was the property of her brother, Dr. Conrad Zoeller who lived next door, was found in the decedent's apartment and another shirt belonging to Dr. Zoeller was in the possession of defendant when he was apprehended. Dr. Zoeller testified that his sister took his shirts to the laundry and that these shirts must have been taken from her car.

Deceased owned a diamond-studded wrist watch. It had a row of diamonds on each end of the case and the numerals on the face of the watch were made of small diamonds. It was described as an expensive "very prominent-looking watch." Defendant was shown by a number of witnesses to have been wearing that watch on October 23, 24, and 25.

At about 11:30 p. m. on October 24, defendant approached one James Fisk at Independence, Kentucky, and with the use of a revolver, forced Fisk to drive him toward Louisville. Fisk's car was stopped at a roadblock, apparently near Covington, Kentucky, where defendant pointed the gun at the head of Captain R. C. Richardson and tried to force him to get into the car, but after a time the officer was able to disarm defendant and he was forcibly removed from the car and taken into custody by officers present.

In view of the testimony of the defendant, hereinafter detailed, we consider it advisable to mention the testimony of Donald Cole. He stated that he was with deceased after 10 p. m. on October 22 and spent the night in deceased's apartment; that they slept in the same bed; that at some time after retiring deceased got up and answered the front door and that someone came into the apartment for a time; that the next morning he dressed and left for work about 7 o'clock and that he never saw deceased alive again. On cross-examination this witness stated that he had been at deceased's home on numerous occasions; that both he and deceased were homosexuals and that they had had abnormal sexual relations with each other.

Defendant testified that in September 1962 he was convicted of the offense of obtaining a narcotic drug under false pretenses and sentenced to imprisonment in the Missouri State Penitentiary for two years; that prior thereto he had become acquainted with deceased and for a period of about two years had, from time to time, purchased marihuana and certain drugs, mainly benzedrine pills, from him; that he had become addicted to narcotics prior to entering the penitentiary; that he was released from the penitentiary on September 26, 1963; that he saw deceased about a week thereafter and deceased offered to try to get him a job; that deceased called him on October 22 and asked him to stop by his apartment about 11:30 p. m. and talk with him about a job; that when he went to deceased's home deceased answered the door and told him that he had an engagement with Mr. Cole and that he should return about 7:15 the following morning; that he then left the premises. He stated that when he returned the next morning deceased was drinking vodka and appeared to be very upset; that deceased stated that he had quarreled with Cole as a result of defendant having come to the apartment the night before; that there was a revolver on the dresser and that deceased threatened to kill himself; that deceased seemed to be irritated at him and finally, after threatening to become sexually intimate with him, picked up a metal shoehorn about two feet

long and started toward him; that he then picked up the gun and as deceased advanced toward him fired the first shot when he was about ten feet away, and a second one when he was about three feet away, and the third shot, which caused deceased to fall, was fired when he was "right over me."

Defendant testified that he had not used any narcotics after being released from the penitentiary, but that after the shooting he was scared and immediately went to the dresser where deceased kept his narcotics and obtained all of the marihuana and pills that were there. He also took the diamond wrist watch which was lying on the dresser and the gun he used in the shooting and left the apartment. He stated that he was under the influence of narcotics from that time until he was arrested and had only a vague recollection of much that occurred while hitchhiking from St. Louis to Kentucky.

Defendant stated that he knew Dr. Zoeller and knew that deceased and the doctor were friends. He denied stealing the gun or the shirts from Mary Zoeller's car and apparently endeavored to account for his possession of Dr. Zoeller's shirt by testimony to the effect that deceased had given him some clothing, including a number of shirts.

■ Defendant has not filed a brief and we will therefore consider the contentions properly raised in his motion for new trial. State v. Deutschmann, Mo.Sup., 392 S.W.2d 279. The first assignment presents the contention that the conviction cannot stand because there was no proof of venue and no instruction requiring a finding that the shooting occurred in the City of St. Louis, Missouri. That contention is without merit. There was direct testimony that the shooting occurred at 1325a Goodfellow in St. Louis, Missouri. Also, the instruction submitting second degree murder required a finding that the events occurred in the City of St. Louis, Missouri. The assignment is disallowed.

The remaining assignments relate to the instructions and the sufficiency of the evidence to support the submissions. The court gave instructions submitting (1) conventional first degree murder, (2) felony murder, (3) second degree murder, (4) manslaughter, and (5) the defense of self-defense.

■ Defendant's motion states that there was no evidence to support a submission of first degree murder and that in any event the court erred in giving two instructions submitting that offense. We need not consider the merits of those contentions because defendant was not convicted of first degree murder and is therefore in no position to complain of the alleged errors in regard to that submission. State v. Anderson, Mo.Sup., 375 S.W.2d 116 [7]; State v. Sprout, Mo.Sup., 365 S.W.2d 572 [11].

■ The next contention is that the court erred in failing to define the word "homicide." In that connection we note that that word does not appear in the second degree murder instruction under which defendant was convicted. Moreover, while we doubt the necessity of defining the word, we find that the phrases, "excusable homicide," and "justifiable homicide," are defined in one of the instructions. Those definitions should have been sufficient to give the jury a general idea as to the meaning of the word "homicide." We rule that no prejudicial error resulted from the failure of the court to define the word "homicide."

■ Another assignment is that the evidence was not sufficient to support the giving of the second degree murder instruction. In considering that contention we observe that the evidence unquestionably shows that defendant intentionally killed the deceased with a deadly weapon. That raises a presumption of murder in the second degree. State v. Hogan, 352 Mo. 379, 177 S.W.2d 465. We have frequently held that "when the evidence shows the defend-

ant intentionally killed deceased with a deadly weapon that is sufficient to sustain a conviction of second degree murder. State v. Thomas, Mo.Sup., 309 S.W.2d 607, 609, and cases cited." State v. Williams, Mo.Sup., 323 S.W.2d 811, 813. It is also significant that defendant fled from the scene and from the State following the shooting. Of course, defendant's testimony made an issue of self-defense but that issue was for the jury to determine. We rule that the evidence was sufficient to make a submissible case of second degree murder.

The final assignment is that the court erred "in giving the second degree murder instruction and the verdict form permitting the jury to return a verdict of second degree murder for the reason that the statute covering second degree murder does not permit the giving of a life sentence but should have been restricted to not less than 10 years and such instruction and verdict form were prejudicial to this defendant." The instruction in question told the jury that in the event it found defendant guilty it should "assess his punishment at imprisonment in the penitentiary for such length of time as you deem proper, not less, however, than ten years." The instruction followed the precise wording of § 559.030 which says that the punishment shall be imprisonment for "not less than ten years." It does appear in the transcript that one of the forms of verdict given to the jury by the court contained the words "imprisonment for life." However, the provision for imprisonment for a period of not less than ten years would certainly authorize a verdict of imprisonment for life. A form of verdict which specifies a punishment which is within the limits prescribed by the statute is not erroneous. Moreover, defendant's attorney examined the forms of verdict before submission and made no objection. He, in fact, stated, "I am sure they are all right." The contention is without merit and hence is ruled adversely to defendant.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.