STATE of Missouri, Plaintiff-Respondent,

v.

William Lee MINTNER, Defendant-Appellant.

No. 53068.

Supreme Court of Missouri,
Division No. 1.

July 8, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, James T. O'Brien, Asst. Atty. Gen., St. Louis, for respondent.

James A. Bell, St. Louis, for appellant.

HENLEY, Presiding Judge.

By information substituted for an indictment defendant was charged, under the the Habitual Criminal Act,[1] with manslaughter. Section 559.070. A jury found him guilty, as charged. The court found that prior to this offense he had been convicted, sentenced and imprisoned for two felonies, and, after his motion for new trial was overruled, sentenced him to imprisonment in the custody of the Department of Corrections for a term of ten years. Section 559.140. Defendant appeals. We affirm.

The charge of manslaughter is based on culpable negligence in the operation of an automobile causing a collision with a Chrysler station wagon and the death of Maxine Patterson, a passenger in the latter vehicle. Defendant's points relied on are (1) that the evidence is insufficient to sustain his conviction, and (2) error in refusing to give three instructions offered by him.

The evidence, in a light most favorable to the state,[2] is as follows: On Sunday night, July 17, 1966, at about 11 o'clock, Officer George Hollocher of the St. Louis Police Department, with his partner, Officer Daniel Hodges, seated beside him, was driving a police car headed south on Twentieth street, between Angelica and Penrose avenues, in the City of St. Louis, when a 1958 model Mercury convertible proceeding north at an excessive rate of speed pulled out to pass a Bi-State Transit bus and into the path of the police car. To avoid a collision with the Mercury, Officer Hollocher abruptly turned his car to its right, drove over the curb and onto the sidewalk. The Mercury, with its top

down, was occupied by two people, a man and a woman; defendant was its driver. The officer immediately turned his car around and headed in the direction of the Mercury; he turned on his siren and red lights and almost caught the Mercury as it was turning East on Penrose; having negotiated this corner, the Mercury "took off" in a burst of speed, gradually pulling away from, but never out of sight of, the police car; from this point on throughout the chase the police car had its siren blowing and red lights flashing as a signal for the Mercury to stop. The Mercury, with the police car in hot pursuit, led the chase at high speeds for approximately twenty blocks over streets, avenues and alleys through a highly developed, heavily populated area of northeast St. Louis. In the course of the chase the speed of these vehicles exceeded 80 mph at several points and, except when turning corners, their speed was never below 50–60 mph. At one point (in an alley) the police car closed to within twenty feet of the Mercury, but during most of the chase a half block or less separated them; while in the alley the Mercury's lights were turned off and from that point on to the point of collision at 23rd street and St. Louis avenue (approximately seven blocks) it was driven with its lights off at speeds up to 80–85 mph. During the chase defendant ran through eight stop signs. Travelling south on 23rd street toward its intersection with St. Louis avenue (an east-west thoroughfare) at a speed in excess of 60 mph defendant drove the Mercury through a stop sign into the intersection and into collision with a westbound Chrysler station wagon, hitting it broadside and killing one of its occupants, Mrs. Patterson. At no time, from beginning to end of the chase, were the Mercury and its occupants out of sight of the officers; at the time of the collision the police car was about a half block behind the Mer-

---

1. Section 556.280, RSMo 1959 and V.A.M.S. All section references are to Revised Statutes of Missouri, 1959, and Vernon's Annotated Missouri Statutes.

2. State v. Morris, Mo., 307 S.W.2d 667, 668 [1].

cury and both officers saw the collision. The Mercury hit the Chrysler with sufficient force to bend the Chrysler's frame and turn it over on its top.

In State v. Morris, Mo., 307 S.W. 2d 667, 672 [3], the court said:

" 'The rule is well established by the decisions of this Court that negligence to be deemed culpable within the meaning of the statute and, therefore, criminal, is something more than ordinary, common-law, or actionable negligence. The culpability necessary to support a manslaughter charge must be so great as to indicate a reckless or utter disregard for human life.' * * * State v. Adams, 359 Mo. 845, 224 S.W.2d 54, 57 * * *. In the Adams case the court said: 'The fundamental requirement to fix criminal responsibility for the consequences of culpable negligence under Sec. 4382 (RSMo 1939) [V. A.M.S. § 559.070] is knowledge actual or imputed that the negligent act would tend to endanger human life. State v. Studebaker, supra [334 Mo. 471] 66 S.W. 2d [877] loc. cit. 881, and authorities there cited.' "

Under the facts above stated the jury reasonably could have reached the conclusion that defendant's conduct in driving his automobile over the thoroughfares of this heavily populated area at night at speeds sometimes exceeding 80 mph, ignoring stop signals, and with his lights off part time, constituted such negligence on his part as to indicate a reckless and utter disregard for, and indifference to, human life, and that defendant knew or, in the exercise of ordinary care, should have known that his actions were likely to endanger human life. State v. Morris, supra; State v. Mayabb, Mo., 316 S.W.2d

609, 612 [7–8]; State v. Duncan, Mo., 316 S.W.2d 613, 615–617 [3–5]. There was substantial evidence to support the conviction.

Defendant's points II, III and IV of his brief are: "That the court erred in refusing to give defendant's instruction A [and B and C]." Each instruction is set out in full in the argument portion of his brief under the numbered point referring to that particular instruction. But nowhere in the points relied on, nor in the argument, does he state how, wherein or in what respect the court erred in refusing to give these three instructions. His brief leaves it for this court to guess what he has in mind as reasons, if any, why this action was error. We decline to guess. The brief is wholly inadequate and fails to comply with Civil Rule 83.05, V.A.M.R.[3] Nor does reference to the motion for new trial or proceedings when the instructions were settled show us how or wherein the court erred in refusing to give these instructions. After both sides had rested, defense counsel excepted to the court's refusal to give these instructions, but he stated no reasons. The motion for new trial in three separate numbered points state merely "That the court erred in refusing to give defendant['s] instruction number A [and B and C]." These assignments of error in the motion are insufficient to preserve anything for review. Rule 27.20, V.A.M.R.; State v. Holmes, Mo., 389 S.W.2d 30, 34 [7].

Our examination of other matters we review as required by Rule 28.02, V.A. M.R., discloses no error.

The judgment is affirmed.

All concur.

---

**3.** See Rule 28.18, providing that the Rules of Civil Procedure shall govern the practice and procedure in appeals in criminal cases in this court.