Roger Lee McQUEEN, Appellant,

v.

STATE of Missouri, Respondent.

No. 55532.

Supreme Court of Missouri,
En Banc.

Dec. 13, 1971.

Rehearing Denied Jan. 10, 1972.

Lashly, Caruthers, Rava, Hyndman & Rutherford, William I. Rutherford, St. Louis, for appellant.

John C. Danforth, Atty. Gen., John W. Cowden, G. Michael O'Neal, Asst. Attys. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Appeal from denial, after hearing, of relief under Supreme Court Rule 27.26, V.A.M.R.

Appellant, Roger Lee McQueen, was found guilty of murder in the second degree by a jury in the St. Louis Circuit Court on October 2, 1964, and sentenced to life imprisonment. Upon direct appeal, the conviction was affirmed by this Court. State v. McQueen, Mo.Sup., 399 S.W.2d 3. Because that appeal was submitted without representation by counsel for defendant, the judgment on appeal was set aside. The cause was resubmitted, with counsel representing defendant, and the judgment of the trial court again affirmed. State v. McQueen, 431 S.W.2d 445.

Prior to the second submission of the appeal, a motion to set aside the judgment had been filed under Supreme Court Rule 27.26 in the St. Louis Circuit Court. On September 12, 1969, an evidentiary hearing on the motion was held and the trial court denied relief. This appeal followed.

The ground for relief urged on appeal is that defendant was denied effective assistance of counsel at his trial. The primary basis for the claim is the failure of trial counsel to interview any of the state's witnesses prior to trial. Buttressing the claim is the charge that trial counsel failed to require a foundation for an out-of-court statement of the accused; failed to move for a mistrial because a witness inferred that defendant had been imprisoned in Jefferson City; and failed to read the instructions before filing a motion for new trial.

As stated on the original appeal in this matter (399 S.W.2d 4): "In presenting its case the State relied upon circumstantial evidence. With meticulous care, it presented a large quantity of detailed facts which complied with the strict requirements of a circumstantial case and from which a jury reasonably could have found, beyond a reasonable doubt, that defendant shot and killed George Francis on October 23, 1963. * * * [T]he defendant subsequently testified and admitted that he shot the deceased on the date heretofore mentioned, but stated that he did so in self-defense after the deceased attacked him."

The names of forty-one witnesses were endorsed on the indictment. Twenty-five witnesses testified for the state. Four were relatives of the deceased. Four testified to defendant's presence in the House Springs area around 5:00 P.M. on October 23, 1963, several hours after the killing. Three were residents of Kentucky who testified about defendant's apprehension there on October 24. Three testified about the gun found on defendant and used in the shooting. One witness, a resident of Chicago at the time of trial, testified to having spent the night with Francis on October 22. One witness identified hospital records concerning the deceased. A doctor who saw the body and a pathologist testified to cause of death. Two fingerprint men from the St. Louis Police Department identified fingerprints on sunglasses found in deceased's apartment as those of defendant. A police ballistics expert testified that spent bullets found at the crime came from the weapon found on defendant. The police chemist testified about the analysis of tablets found on defendant. Two police officers testified to investigation at the scene. One officer testified about returning items found on defendant from Kentucky.

At the hearing on the 27.26 motion, trial counsel for defendant admitted that he interviewed none of the witnesses for the state. He stated that as a matter of policy he had "never been one to go out and interview [state's witnesses] * * *. I never like to go out and interview State's witnesses."

On this aspect of the case, the trial court found:

" * * * In view of the fact that the defendant stated to his counsel that he was present at the scene and that he did actually kill the deceased George Francis, and in view of the fact that there was no eyewitness to the actual killing by defendant of George Cooper Francis, it cannot be said that the defendant was inadequately represented. The mere fact that he failed to interview all the witnesses or any of the witnesses on the indictment does not necessarily mean he was negligent in the preparation of the case. It may well have been that he obtained information from other sources. Counsel stated that he did. There is no reason to disbelieve him.

"The complaint that Mr. Brown failed to interview a single witness endorsed by the State does not appear to have prevented the defendant from obtaining a fair trial. He testified that he shot George Francis with only the two of them in the room. The issue was one of self-defense.

* * * * * *

"In any event, it is not shown that failure to interview the witnesses endorsed by the State prevented the defendant in this case

from having a fair trial. Other points with reference to inadequacy of counsel are disposed of in State v. McQueen [Mo. Sup.], 431 S.W.2d 445. There is no proof that Mr. Brown's representation of defendant was inadequate. State v. Kern [Mo.Sup.], 447 S.W.2d 571."

Appellant argues that attorneys "must be required at least to attempt to interview the state's witnesses where an appointed case is for trial. Failing that, there can be no trial. * * * [We] cannot try a case and have any trial at all unless there has been some search through the witnesses stories for a defense and for weaknesses to be probed by cross-examination."

Appellant cites several cases in which a failure to investigate by counsel was held to have resulted in inadequate assistance. In Goodwin v. Swenson, W.D.Mo., 287 F.Supp. 166, the defense to a first degree murder charge was insanity. Defense counsel failed to pursue obvious sources of evidence which were available to support such defense. His failure to do so resulted, in effect, in no defense. The court held that in such circumstances defendant had been denied effective assistance of counsel.

In Coles v. Peyton, 4th Cir., 389 F.2d 224, 226 [3], the court stated: "Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial. An omission or failure to abide by these requirements constitutes a denial of effective representation of counsel unless the state, on which is cast the burden of proof once a violation of these precepts is shown, can establish lack of prejudice thereby." In that case, failure of appointed counsel to investigate the reputation for chastity of a prosecutrix in a rape case, to attempt to identify and interview an alleged male companion of the prosecutrix, to interview a woman who called the police to the scene of the offense when she heard the prosecutrix and defendant arguing, and

failure to inform defendant of the necessity of proof of penetration were held to constitute ineffective assistance of counsel. Upon failure of the state to show lack of prejudice, the defendant was held entitled to relief on habeas corpus.

A major shortcoming of defense counsel in that case lay in the failure to make clear to defendant the possible defense of lack of penetration. According to one attorney, defendant had admitted having had intercourse with the prosecutrix, but according to another he had said he was "trying" to have intercourse with her. Here the possibility of defense of lack of penetration clearly existed. Defendant was not advised of the significance of the second version of the event. Defense counsel undertook no investigation of medical report which showed negative reports of slides and swabs for spermatoza and seminal stains.

The situation in Coles was, thus, close to that in Goodwin, a lack of preparation and investigation which would have pointed to a quite plausible defense.

In Cross v. United States, 8th Cir., 392 F.2d 360, defense counsel, at the close of the case, stated: "I did not attempt to develop the case; I did not attempt to interrogate any witnesses or do anything else; * * *." 392 F.2d 365.

Noting its rule laid down in Cardarella v. United States, 8th Cir., 375 F.2d 222, 230, to the effect that "a charge of inadequate representation can prevail 'only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court'," the court concluded: "The trial was certainly not a sham or a mockery of justice and in fact was probably, as Judge Young noted, the best tried criminal case of that term." 392 F.2d 367. However, the court concluded that it could not, in view of Howard's statement, conclude that his failure to investigate and develop defendant's case resulted in no prejudice to defendant. The court remanded the case

to the trial court with directions to conduct an evidentiary hearing on whether defendant had been denied effective assistance of counsel.

In Cross, the primary failure on the part of defense counsel was in not interviewing and subpoenaing as witnesses two persons mentioned by defendant in support of an alibi defense.

Although these cases dealt with inadequacy of counsel evidenced by lack of investigation of possible defenses, they cannot be taken as laying down a hard and fast rule that appointed counsel must interview state's witnesses in all cases. Essentially, they hold that investigation must be adequate to permit the proper presentation on behalf of the defendant of available defenses. See People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487, 490[3, 4]; People v. Floyd, 1 Cal.3d 694, 83 Cal.Rptr. 608, 464 P.2d 64.

In this case, the defense was self-defense. The defendant was the only eyewitness available to sustain that defense. Therefore, consultation with the defendant in this case was basically what was required in order to make proper and adequate presentation of the defense.

Appellant's argument is essentially that examination of the state's witnesses prior to trial might have permitted a stronger presentation of the defense. In this respect, he is specific in only a totally speculative realm. The defendant testified that when he went to the apartment of the deceased, the deceased advanced upon him, attempting to commit a forcible act of sodomy upon him, threatening him with a long shoe horn. Defendant testified that he saw a gun on the deceased's dresser and fired at the deceased in self-defense.

The state's evidence was that the gun had belonged to a woman named Mary. She had carried it for some time under the seat of her auto. She first discovered it was missing after the killing. Mary's brother was a dentist. A shirt bearing his name was found in the deceased's apartment. Another shirt bearing the dentist's name was in defendant's possession when he was arrested in Kentucky. The dentist testified that his sister took his shirts to the laundry and that they would have been in his car for that reason. Neither the dentist nor his sister knew that the shirts had been taken from the car. However, the gist of the evidence would seem to have been that the gun and shirts had been taken from the car and that defendant was the thief and had the gun in his possession when he went to deceased's apartment.

According to appellant, whether or not the defendant's version of the presence of the gun at the apartment was true was vital on the issue of premeditation, an element of murder in the second degree. Appellant argues that a more penetrating cross-examination of the dentist might have cast doubt upon the theory that the shirts and gun had been taken by defendant from the sister's auto. The dentist and defendant were acquainted. Defendant said the dentist was acquainted with the deceased, but the dentist denied that he was. The deceased was a homosexual and, according to appellant, the court and defense attorney had concluded that the dentist was also. Appellant argues that more pressing cross-examination of the dentist about his homosexual activities and connection with the deceased might have impaired the inference that defendant had stolen the gun from the sister's auto.

This argument ignores the fact that at the trial defense counsel asked the dentist whether or not he was a homosexual. Objection to the question was sustained. Defense counsel testified at the 27.26 hearing that he knew from defendant of the dentist's homosexual tendencies and of his acquaintance with the deceased. Therefore, defense counsel had the information which appellant now says could and should have been employed to attack the dentist's testimony. Further, defense counsel attempted, unsuccessfully, to make use of

the information in his cross-examination of the witness. What counsel is now saying in effect is that the subject should have been approached differently in the cross-examination. However, this is a matter of second-guessing, not a proper basis for determining whether a defendant had effective assistance of counsel.

Defense counsel was not particularly pressed on the 27.26 hearing about his failure to investigate the possible relations between the dentist and the deceased and to press the matter. He dismissed the suggestion by saying: "It wouldn't have much to do with shooting a man in the head." Certainly, this was not a wholly unreasonable view. The defense presentation was adequate to eliminate, in the jury's mind, the element of deliberation because it did not convict defendant of murder in the first degree. Furthermore, the jury did not find first degree murder under the felony murder submission of homicide in the commission of a robbery. Premeditation might have existed even though the defendant did take the weapon from the dresser in the apartment.

■ The circumstances of this case do not demonstrate that the trial court's conclusion that the failure on the part of defense counsel to interview the state's witnesses did not prevent defendant from having a fair trial and that there was no proof that representation of defendant was inadequate was clearly erroneous.

The other incidents relied upon by appellant as evidencing ineffective assistance of counsel, considered either separately or cumulatively, do not warrant rejection of the trial court's finding. In one a witness inferred that defendant had been imprisoned in Jefferson City. In objecting to the witness's statement, defendant's trial counsel remarked: "I don't want a mistrial, you know that." That remark does not indicate that counsel was determined to proceed without regard for the interests of his client. Counsel might well have had in mind some advantage for his client in proceeding with the trial. Furthermore, counsel's objection effectively limited any further testimony by the witness on the subject. In any event, when defendant took the stand, he revealed all of his prior convictions. Trial counsel, knowing his strategy, could well have felt that there were no real grounds for making an issue of the witness's unresponsive remarks.

■ Appellant says that trial counsel should have insisted upon further foundation for testimony by Kentucky police officers to defendant's denial at the time of arrest of having known or killed the deceased. Trial counsel did make no objection at the time the matter was first opened by the circuit attorney. Inasmuch as the statements came in as part of the state's case, counsel may well have felt that some advantage might accrue at that time in getting in the defendant's exculpatory statements. Decisions since the trial of this case have made trial counsel much more aware of the voluntariness issue than at the time of trial here. The lack of objection by counsel here does not demonstrate inadequate assistance. The alleged failure to read the instructions before preparing the motion for new trial was considered and found nonprejudicial in State v. McQueen, supra, 431 S.W.2d 450 [6–10].

■ Appellant's Point II on this appeal is: "THE COURT ERRED IN OVERRULING MOVANT'S MOTION UNDER RULE 27.26 FOR THE OTHER REASONS STATED IN MOVANT'S MOTION AND FOR THE REASONS HERETOFORE RAISED, BRIEFED, ARGUED AND DECIDED ADVERSELY TO THE MOVANT." This point is not briefed in any manner. Other reasons stated by the motion are not considered because this Court reviews only such matters as are properly briefed on appeal. State v. Mintner, Mo.Sup., 429 S.W.2d 762, 764 [4]. Nor does a request, in 27.26 proceedings, to review matters previously deter-

mined place anything before this Court for review. Crawford v. State, Mo.Sup., 436 S.W.2d 632.

Judgment affirmed.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court en Banc.

MORGAN and BARDGETT, JJ., concur.

FINCH, C. J., concurs in separate concurring opinion filed.

HOLMAN and HENLEY, JJ., concur and concur in separate concurring opinion of FINCH, C. J.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER, P. J., dissents in separate dissenting opinion filed.

FINCH, Chief Justice (concurring).

This case originally was heard in Division One where an opinion written by Commissioner Welborn was adopted with a dissent by Judge Seiler. Thereafter, it was reargued in Banc.

I concur in the Welborn opinion, but in view of the strong dissent by Judge Seiler on the question of whether there should be a reversal on the basis of ineffective assistance of counsel, plus the very able and strenuous brief and argument on that question by counsel for appellant on this appeal, I have concluded to file this concurring opinion. This question of asserted ineffective assistance of counsel is being raised in many post-conviction proceedings at the present time, and is one which merits, I think, these additional comments.

The test on this question which this court has stated on several occasions is whether counsel's actions, or lack thereof, have made the trial a farce or mockery of justice. Garton v. State, Mo., 454 S.W.2d 522, 530; Holbert v. State, Mo., 439 S.W.2d 507, 509; Holt v. State, Mo., 433 S.W.2d 265, 267. This is the test which many federal courts, including the Court of Appeals for the 8th Circuit, have adopted. Cardarella v. United States, 8 Cir., 375 F.2d 222, 230, cert. den. 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176; Kress v. United States, 8 Cir., 411 F.2d 16, 22; Borchert v. United States, 9 Cir., 405 F.2d 735, 738, cert. den. 394 U.S. 972, 89 S.Ct. 1466, 22 L.Ed.2d 753; Johnson v. United States, 10 Cir., 380 F.2d 810, 812; cases cited in 17 Mod.Fed.Prac.Dig., Crim.Law, Key 641.13(1).

Stated in this language, the rule perhaps sounds unduly restrictive or harsh by reason of the choice of descriptive terminology. However, I believe that examination of the cases indicates that in most instances the courts, after stating such a test, have sought actually to ascertain whether there has been such failure on the part of the attorney that defendant has not had a fair trial. If he has not had such a trial, the courts, even though using the farce and mockery terminology, have granted a new trial. Where, however, the court has concluded that under the evidence before it the defendant had a fair trial, then he has not been granted another trial on the basis of lack of effective assistance of counsel. This is true even though the evidence may have shown that counsel might have prepared or handled the case differently or done otherwise, possibly with a better result. After all, the defendant has had a trial with counsel and an appeal to review any asserted errors in that trial unless, of course, he failed to take his appeal. In post-conviction review, he is being given a second opportunity to obtain relief on the basis that in his prior conviction he was deprived of constitutionally guaranteed rights.

I believe that in the principal opinion the court has undertaken to determine whether appellant had a fair trial or whether he was deprived thereof by reason of ineffective assistance of counsel. I join in the conclusion of the principal opinion that in-

effective assistance of counsel so as to entitle appellant to a new trial has not been shown. To use language from Clayton v. United States, 8 Cir., 302 F.2d 30, and Crosswhite v. State, Mo., 426 S.W.2d 67, 70, quoted in the dissenting opinion, I am not "left with a definite and firm conviction that a mistake has been committed" by the conviction of the defendant. In so stating, however, I do not mean to infer that a lawyer for defendant ought not to investigate the case fully, or that I approve of the course followed by counsel in this case wherein he said that he did not interview the state's witnesses and that it was his customary practice not to do so. Counsel, even when appointed without compensation, should prepare the case fully. He should comply with the canons of professional responsibility of this court, and, I think, should comply with the American Bar Association standards relative to the defense function. However, that is not the question presented to us in this post-conviction proceeding. The question we must determine here is whether, as a result of the conduct of counsel, appellant should be granted a new trial on the basis that he was improperly convicted as a result of not having had a fair trial. In considering this question, I think it will be helpful to examine those things on which the dissenting opinion relies as reasons for granting a new trial.

The dissent starts with the premise that the defendant has been deprived of a proper defense because no lawyer could properly defend a defendant without talking to the state's witnesses, and defendant's counsel did not do that. As pointed out above, I agree that counsel should have done more, but I do not agree that a new trial should be granted merely on the proposition that counsel should have handled the case differently than he did or should have made investigation which he did not make. The question we must decide is whether the defendant was prejudiced as a result of ineffective assistance of counsel.

First, the dissent raises the question of whether witnesses could have been produced to show that deceased did in fact have the long handled shoehorn with which defendant claims to have been threatened by deceased. The opinion mentions several persons, including deceased's mother, his aunt, his stepbrother, and Donald Cole, and then says 'any or several of these witnesses *might very well* have been able to confirm that the deceased did have such a shoehorn." (Emphasis supplied.) This, I submit, is not a sufficient basis for a reversal. Under our post-conviction rule (Supreme Court Rule 27.26(f), V.A.M.R.), the movant has the burden of establishing that he is entitled to relief, but defendant in this proceeding has offered no proof that any of these persons had any knowledge or would so testify on retrial. Under these circumstances, if we sent the case back for a new trial on the basis of this possibility, there might be no additional evidence whatsoever on the question on retrial. We are left to pure speculation.

Next, the dissent discusses the gun with which deceased was killed and speculates that if the deceased and a dentist, allegedly also a homosexual, had carried on their activities in deceased's apartment, *"it might well be* that the gun actually was in the apartment because the dentist had left it there (as well as his shirts)." (Emphasis supplied.) The opinion then comments that counsel made no effort to interview either the dentist or his sister with reference to this question. However, at the 27.26 hearing there was no showing whatsoever that any such evidence exists or that on retrial such evidence would be available.

The opinion goes on to speculate that the people who lived beneath the deceased's apartment *"may have known* whether the dentist had been in the apartment." (Emphasis supplied.) Again, appellant's evidence on his post-conviction motion contained nothing to show that those people had any such information and that any evidence so showing would be available in the event of retrial. If the case were reversed and remanded, we have no assurance whatsoever that on retrial there would be any such testimony.

Next, the opinion refers to defendant's testimony that deceased was drinking and was like a madman and comments that no attempt was made by counsel to find out whether the deceased's cousin, who talked to him by telephone that morning, would corroborate that this was deceased's condition, nor did he ascertain if the police had tested the deceased's blood for alcoholic content. Again, there is no evidence in this post-conviction proceeding that deceased's cousin would testify that deceased had been drinking and was like a madman, nor is there any evidence as to whether the police had tested the deceased's blood, and there is nothing to show that any such evidence would be available on retrial.

Finally, the opinion refers to the fact that Cole said that some unidentified person came to the apartment in the middle of the night, was admitted by deceased and was taken to another bedroom where he remained when Cole left at 7:15 A.M. The opinion observes that whoever this was *might* have heard what occurred and that it is worth investigating. However, there is no clue in this proceeding as to who this person was, or how he is to be located, or that he could be located, or has been located, nor is there any showing whatsoever that there would be any testimony of this kind on a rehearing.

The dissent then takes the position that it would be unrealistic to expect the defendant to prove definitely that he would have been acquitted if a proper investigation had been made. I agree. As the dissent says, "No one can say what a jury will do with a case." However, defendant can undertake to determine whether there is evidence existing which an investigation prior to the original trial would have un-

covered, and that such evidence is substantial and such that the defendant was entitled to have it presented to the jury in his trial. In this way, the defendant would show that on a retrial additional evidence would be available and that he has been prejudiced as a result of failure of counsel to investigate and obtain such testimony for use at his original trial.

·I do not agree with the conclusion of the dissent that failure of defendant's original counsel to investigate more than he did is inherently prejudicial so as to entitle appellant automatically to a new trial. In cases such as Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, where constitutionally required counsel had been denied, a new trial was granted merely because counsel was denied, but we are not dealing with that kind of situation. Here defendant was represented by experienced counsel. The trial resulted in an acquittal on the first degree murder charge and a conviction of murder in the second degree. This is not a case of a defendant having no counsel to try his case. Instead, we are seeking to determine whether, on the basis of alleged ineffective assistance of counsel in the preparation and trial of this case (particularly in failure to investigate adequately), the appellant should be granted a new trial. Whether it was prejudicial to him depends on whether there was other evidence which was important and which a proper investigation would have uncovered. In such a situation, I am of the opinion that it is proper to require that movant assume and sustain the burden of demonstrating that on retrial there will be evidence which is substantial and which was not available at the previous trial because of failure of his counsel to properly investigate.[1]

1. In United States ex rel. Green v. Rundle, 3 Cir., 434 F.2d 1112, one of the cases cited and relied on in the dissent, such burden was placed on the defendant. In that case the complaint of defendant as to his counsel was a failure to investigate whether an employer's payroll records would substantiate defendant's claim of alibi. The court reversed and remanded the proceeding for further hearing because since the trial court had acted on defendant's petition the Third Circuit had adopted a normal competency test in lieu of the farce and mockery test. In so holding, the court said, 434 F.2d l. c. 1116: "Thus the case must be remanded to the district court for a hearing at which appellant shall have the opportunity of

If a retrial is granted and defendant is to derive any real benefit as a result, an investigation such as I have suggested will be necessary prior to the retrial. It is better and more appropriate, I suggest, to require that this occur prior to and in connection with the post-conviction proceeding and prior to granting a new trial, rather than to simply automatically grant a new trial and then have the investigation made.

What I suggest is not requiring that appellant assume an impossible job. It is not forcing appellant to prove that on retrial an acquittal will result. It merely avoids an exercise in futility in requiring a second trial when in fact there is no more evidence and no real basis on which appellant is entitled to a new trial.

## DONNELLY, Judge (dissenting).

The problem of resolving claims of convicts that trial counsel were "ineffective" has vexed the courts since Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The books are full of futile attempts by judges to formulate *objective* standards by which to determine the question in cases involving different facts and situations. In my opinion, the search has been misdirected because it has lost sight of the ultimate goal in any criminal case, which is "that persons accused of crime be accorded a 'fair trial.'" Waltz, Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases, 59 Nw U.L.Rev. 289, 305, 341, 342; Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787, 794 [7].

I would abandon the quest for objective standards of lawyer conduct as tests to be generally applied when questions of ineffectiveness of counsel are raised.

It is well-established in Missouri that a defendant may, after sentence, file a motion to vacate asserting that his counsel at trial was ineffective; and that he shall be given an evidentiary hearing if issues of fact are raised in the motion. S.Ct. Rule 27.26(e).

I would require the trial judge to review the transcript of the trial, to consider the evidence adduced at the evidentiary hearing, and, on the basis of all the facts and circumstances of the particular case, decide the question by stating only whether, in his opinion, the defendant was *denied a fair trial.* On appeal, the entire record would again be reviewed and a decision rendered as to whether the conclusion of the trial judge was "clearly erroneous."

There is authority by analogy for my proposal: (1) in considering assertions of error under V.A.M.R. 27.20(c), our "plain error" rule, we "review all the facts and circumstances in each case and determine on a case-to-case basis whether manifest injustice has resulted from the alleged error." (State v. Ellifrits, Mo.Sup., 459 S.W. 2d 293, 297); and (2) we are authorized by the United States Supreme Court to hold a federal constitutional error harmless if we are "able to declare a belief that it was harmless beyond a reasonable doubt." (Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.)

I submit that in each of these judge-made determinations a *subjective* evaluation as to whether the accused was *denied a fair trial* is intrinsically involved. Inevitably, "fair trial" is the essential consideration. I would apply this concept to claims of ineffectiveness of counsel.

I would reverse and remand this case for the review suggested, with directions

developing, by the testimony of his employer or by production of the payroll records, that his alibi could in fact have been corroborated. In the absence of such a showing, the writ will be denied."
I recognize that in Coles v. Peyton, 4 Cir., 389 F.2d 224, also cited in the dissent, the court held that the burden was

shifted to the prosecution to show lack of prejudice to defendant resulting from ineffective assistance of counsel. However, there was a strong dissenting opinion which, in my judgment, expressed the sounder viewpoint. It would have required that defendant establish prejudice.

that the trial court permit appellant to again appeal if the conclusion of the trial court is adverse to him.

SEILER, Presiding Judge (dissenting).

I respectfully dissent. In my opinion the conclusion of the trial court that defendant received effective assistance of counsel was clearly erroneous and on the entire evidence I am "left with the definite and firm conviction that a mistake has been committed", Clayton v. United States (C.C.A. 8) 302 F.2d 30; Crosswhite v. State (Mo. Sup.) 426 S.W.2d 67. I say this because on the record counsel did not meet the standard of normal competence. Endorsement of the kind of representation which was provided here would lead to relaxation of the standards adopted by the court, particularly Canon 6 and DR 6–101(A) (2).[1] Relaxation of this standard degrades the administration of justice and burdens the courts and public, as well as imperiling Sixth Amendment rights of an accused. In this case, where his client was charged with first degree murder, with the state seeking the death penalty and qualifying the jury accordingly, and where the state in presenting its case was to rely entirely on circumstantial evidence, defense counsel admittedly did not interview or attempt to interview a single one of the state's endorsed witnesses.

Counsel undertook to try the case with no preparation on the facts other than talking on several occasions with the defendant, who was at all times confined to jail. Therefore, we are not dealing with the usual attempt to second-guess trial counsel's tactics and strategy chosen after reasonable investigation and research, but instead with judgments made in default of knowledge. No lawyer could have effectively represented defendant in this case without first investigating the state's case. Trial lawyers everywhere know that adequate investigation and preparation are crucial to

an effective defense. No one, asserting his innocence as defendant did, would employ a lawyer in a capital case who made it a condition of his employment that he would make no investigation of the case before trying it. No law professor, worth his salt, would teach his students in a trial practice course that they should make no investigation of the facts before announcing ready for trial. The point is so obvious it would seem unnecessary to state it, but for emphasis we quote from the American Bar Association's Standards Relating to the Prosecution Function and the Defense Function, Part IV, Investigation and Preparation, 4.1—Duty to investigate, p. 161: "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or his stated desire to plead guilty."

These standards were prepared by a committee of experienced judges, prosecutors and trial lawyers, one member being the present Chief Justice of the United States.

Other than the proposed opinion in this case, I know of no case holding that where there was a complete failure to investigate as here, defendant nonetheless was not denied effective assistance of counsel. In Cross v. Peyton (C.C.A. 8) 392 F.2d 360, cited in the proposed opinion, where there was a comparable failure—counsel made no effort to interview witnesses or investigate, because he never did any of that until his fee was paid—the court sent the case back for a hearing in the trial court on the effective assistance of counsel issue and we do not know the ultimate outcome. The court did not affirm the judgment. In fact, the appellate court was sufficiently

---

1. "A lawyer should not * * * handle a legal matter without preparation adequate in the circumstances."

concerned over the way counsel had apparently neglected his client that it said it might be necessary for the trial court to consider whether counsel should be disbarred. The Cross case, in my judgment, does not support affirmance of the present judgment.

For other illustrations of ineffective assistance of counsel cases bottomed all or in part on failure to investigate, see United States ex rel. Green v. Rundle (C.C.A. 3) 434 F.2d 1112 (where counsel did not take time to investigate thoroughly employment records which might have corroborated defendant's alibi); Coles v. Peyton (C.C.A. 4) 389 F.2d 224, 226 (no investigation, among other factors, the court stating: " * * * Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial * * *"); Brubaker v. Dickson (C.C.A. 9) 310 F.2d 30 (failure by default of knowledge of what reasonable inquiry would have produced); Fields v. Peyton (C.C.A.4) 375 F.2d 624 (guilty plea after short consultation with appointed counsel at rear of the courtroom); Thomas v. State (Ind.) 242 N.E.2d 919 (inadequate investigation); Hillman v. State, 234 Ind. 27, 123 N.E.2d 180 (defendant's lawyer interviewed no witnesses); Abraham v. State, 228 Ind. 179, 91 N.E.2d 358 (no consultation prior to trial and no investigation); State v. Osgood, 266 Minn. 315, 123 N.W.2d 593 (defendant's lawyer conferred with him once immediately before the trial); McKenzie v. State, 233 Miss. 216, 101 So.2d 651 (defendant tried without prior consultations with appointed counsel).

The earliest case about the indigent defendant being entitled to effective representation is, of course, Powell v. Alabama, 287 U.S. 45, 57–58, 53 S.Ct. 55, 59–60, 77 L. Ed. 158. Here, as there, " * * * during perhaps the most critical period of the proceedings * * * when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself."

\* \* \* \* \* \*

"It is not enough to assume that counsel * * * exercised their best judgment in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thorough-going investigation might disclose as to the facts. * * *"

Obviously witnesses should be interviewed as early as possible, while events are still fresh in their minds. Details of even the most memorable events are subject to memory dissipation, "a leveling-out process in which most of what happened is forgotten within a matter of hours or days", Marshall, Law and Psychology in Conflict, 26–27 (1966). As time passes, inconsistencies and variations between the witnesses for the state tend to disappear. Additionally, battle lines harden, especially in a homicide case, and witnesses unconsciously tend to identify with one "side" of a case. It is impossible to say at this date, after there has already been a trial where the important state witnesses testified free from being questioned ahead of time by the defense as to what they claimed to know about the facts, exactly what could have been developed had trial preparation been made at the proper time.

Specifically, however, in the case before us, various possibilities readily suggest themselves: The defendant testified the deceased (a 37 year old black man weighing around 200 pounds) made an assault on him (age 28, white, weight around 130 pounds) with a weapon consisting of an elongated shoe horn made of a shiny metal with some sort of a carving knife handle, around 2 feet in overall length—the kind some people use to get into their shoes without having to stoop very much. The state then recalled several police officers who had investigated the scene at the deceased's apartment to prove that in searching

the apartment they did not find any such shoe horn, the obvious purpose being to cast doubt on defendant's story that there ever was any such shoe horn available. On this exact point, however, there were several of the state's witnesses who should have had some knowledge on whether deceased had such a shoe horn in his apartment. These were his mother, who lived in the apartment directly below her son; his aunt, who lived with deceased, and his step-brother, who was familiar with the apartment, the clothing of the deceased, and who found the deceased's body around 8:00 p. m. the day of the shooting.[2] Any or several of these witnesses might very well have been able to confirm that the deceased did have such a shoe horn.

The same is true of the witness, Donald Lawrence Cole, the homosexual who spent the night in bed with the deceased at the apartment, got up the next morning, shaved, borrowed some clothing from the deceased, and went on to work. Cole had been in the apartment many times, was intimately acquainted with the deceased, and no doubt knew about the shoe horn. Yet, defense counsel did nothing about checking this possibility and asked no questions of any of these witnesses on this subject.

As pointed out in the original opinion in this case, State v. McQueen (Mo.Sup.) 399 S.W.2d 3, 4, the state relied on circumstantial evidence and "With meticulous care, it presented a large quantity of detailed facts" in making its submissible case. Such a meticulously detailed case, impressive when it stands unchallenged, is also the sort of structure which can start collapsing pretty rapidly once some of the meticulous detail is smudged or dislodged. An important part of the state's case was the theory that defendant had gone to deceased's apartment with a stolen gun for the purpose of robbery and that the matter of self-defense and attempt to commit sodomy did not occur at all. The state had some rather vague testimony from a

dentist and the dentist's sister, who both knew defendant, that the gun used to shoot deceased had been stolen from the dentist's sister's automobile, presumably by defendant.

Defendant told defense counsel that the dentist, who was also a homosexual, and the deceased, another homosexual, knew each other in such relationship. If the dentist and the deceased carried on their activities in the deceased's apartment, it might well be that the gun actually was in the apartment because the dentist had left it there (as well as his shirts). It may have been that when defendant said he saw the gun on the dresser in the deceased's bedroom and picked it up when the deceased started toward him with the upraised shoe horn, that he was telling the truth. But defense counsel made no effort to interview the dentist or the sister or to connect the dentist with the deceased or to find out if this is the way the gun got to the apartment. The people who lived beneath the apartment may have known whether the dentist had been in the apartment. They may have recognized him coming or going. If the dentist left his sister's gun in the apartment it would have cast doubt on the state's theory that the defendant came to the apartment with a stolen gun, bent on robbery.

Defendant's testimony was that the deceased was drinking, was "wobbling", "upset", "raving and screaming", "just like a madman, crazy", yet deceased's cousin testified she talked to him around 8:30 a. m. the morning of the homicide, by telephone. Counsel made no attempt to find out whether she could corroborate any of this from her conversation with the deceased. Nor did counsel make any investigation to ascertain if the police pathologist had made any tests for alcohol in the deceased's blood.

According to Cole, some unidentified third person came to the apartment in the

---

**2.** One of the loose ends in the case was how the aunt, living in the same apartment, failed to hear any shots or discover the body lying in the hall.

middle of the night, was admitted by the deceased and taken to another bedroom, and was still in the apartment when Cole left at 7:15 a. m. Again, no investigation of this was made by defense counsel. Whoever it was might have overheard all that occurred. The possibility was worth investigating. Also, Cole may have seen the gun in deceased's possession or on the dresser, but defense counsel made no investigation and was in no position to venture into an examination of Cole on the subject at the trial. Indeed, with respect to all the key witnesses, counsel was in the unhappy position of not being able to cross-examine effectively, because he had no idea what the answers would be or whether the answers accorded with the facts. It is a fact of life that adverse witnesses do not always tell the truth or the whole truth unless they know the examiner is in a position to expose them if they do not, or unless they sense from his questions that he knows what the true facts are. So when the dentist was asked, for example, whether he was acquainted with the deceased (an affirmative response would have been important, as both the trial judge and defense counsel said there was no doubt in the courtroom but that the dentist was also a homosexual) counsel could do nothing but drop the subject when the dentist answered in the negative.

Even when it came to examining the defendant, counsel was at a disadvantage in never having visited the apartment and having no clear visualization of the arrangement of the rooms, doors and windows. This was apparent during counsel's direct examination of defendant on his account of self-defense, when the trial court almost sustained the state's objections on the ground that defendant had not shown that he could not have retreated or escaped.

There is no way to tell now what a careful checking of the above-mentioned possibilities would have produced had it been made at the crucial time. As it turned out, the state was not able to obtain a first degree conviction, even though the defendant had a prior record and was a narcotics addict. Had the defense been armed with an adequate investigation, cross-examination of the state's witnesses might well have raised substantial doubts and the jury might have found only manslaughter or conceivably might have acquitted.

In my opinion, it is unrealistic to expect this defendant at this date to prove definitely that if a proper investigation had been made an acquittal would have resulted. No one can say what a jury will do with a case. The point remains, however, that the making of no investigation whatever is in and of itself inherently prejudicial. To insist that the defendant now show specific prejudice is requiring him to establish by his own efforts the very things for which the law recognized he needed the assistance of counsel in the first place and which he did not receive. As expressed in Glasser v. United States, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680: " * * * The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial * * * "

When a lawyer attempts to defend a case without prior investigation he is at a constant disadvantage and numerous opportunities for making telling points will pass unrecognized and remain so, although they are there if one but knew where to look. This is recognized in United States ex rel. Green v. Rundle, supra, 434 F.2d 1115, where the court said: " * * * In many instances ineffective assistance of counsel may have had so pervasive an effect on the process of guilt determination that it is impossible to determine accurately the presence or absence of prejudice * * * In such instances a finding of departure from the standard of normal competence requires without more, a new trial * * * "

Moore v. United States (C.C.A.3) 432 F.2d 730, 735, involved a claim of inadequacy of counsel in the preparation for trial. In remanding and overruling the

district court's denial of a hearing, the court discussed adequate preparation for trial as related to effective assistance of counsel and said: " * * * Adequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom. The careful investigation of a case and the thoughtful analysis of the information it yields may disclose evidence of which even the defendant is unaware and may suggest issues and tactics at trial which would otherwise not emerge * * *."

Continuing, the court said as to the standard to be applied, 432 F.2d 1. c. 736: "Whether an indigent is represented by an individual or by an institution, he is entitled to legal services of the same level of competency as that generally afforded at the bar to fee-paying clients. In both cases, therefore, the standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place."

Finally, particularly appropriate to the present case, is the following at 432 F.2d 739: "We have no doubt that counsel acted in an effective manner as far as the trial judge was able to observe his conduct. But representation involves more than the courtroom conduct of the advocate. The exercise of the utmost skill during the trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or to arrange for their attendance. Such omissions, of course, will rarely be visible on the surface of the trial, and to that extent the impression of a trial judge regarding the skill and ability of counsel will be incomplete."

In my opinion, in this case counsel's performance did not come up to the normal standards. The result was inevitable prejudice to defendant, and I would set aside the judgment of conviction and remand the case for a new trial with different counsel.

After reading Judge Finch's interesting treatment of the subject in his concurring opinion, I would like to add this: Judge Finch takes up the various leads which the writer pointed out should have been investigated by counsel in order to get ready to defend the case, stating it is all couched in terms of what "might well be" or what someone "may have known" or "might have heard", and that this is all speculation, with no showing the investigation would have uncovered anything. But this can be said of any investigation. Even the most promising leads may turn out to be worthless, but this does not mean the investigation should not be undertaken. By pointing out what proper investigation might have uncovered, I am attempting to illustrate that counsel's failure to do anything about investigating these obvious leads constituted ineffective assistance of counsel *at the time*, just as was held to be the case in Powell v. Alabama, supra, where counsel made no investigation or thorough preparation.

I quite agree with Judge Finch's admonition that "Counsel, even when appointed without compensation, should prepare the case fully." What I am trying to point out is that it is this aid of counsel during the critical time of getting ready to defend which was irretrievably lost to this defendant's prejudice by counsel's failure to interview any of the witnesses referred to above. There is nothing speculative about this. This was sufficient to reverse in Powell v. Alabama and it should be sufficient here.

Everyone now agrees that where counsel is denied, as in Gideon v. Wainwright, cited by Judge Finch, a new trial must be granted, without calling on defendant to prove he was prejudiced any further. When it is established that a defendant has not had effective assistance of counsel, it seems to me it is a distinction without a difference to say this is not as prejudicial as having no counsel. Either way he has not had the benefit of counsel or a fair trial as we understand a trial to be in Missouri or the nation.