Robert Lee WILLIAMS,
Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 36257.

Missouri Court of Appeals,
St. Louis District,
Division One.

April 13, 1976.

Charles D. Kitchin, Public Defender, James C. Jones, Asst. Public Defender, St. Louis, for movant-appellant.

John D. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Richard L. Poehling, Asst. Circuit Atty., St. Louis, for respondent.

RENDLEN, Judge.

Movant appeals denial of his Rule 27.26, V.A.M.R., motion, seeking to set aside the first degree murder conviction and sentence of life imprisonment, affirmed on direct appeal in *State v. Williams*, 473 S.W.2d 388 (Mo.1971).

Appellant asserts as error: (1) ineffective assistance of counsel occasioned by his attorney's failure to interview possible alibi witness and failure to communicate sufficiently often with appellant; (2) the conviction was procured by knowingly perjured testimony.

Our review in Rule 27.26 proceedings is limited to determining whether "the findings, conclusions and judgment of the trial court are clearly erroneous," Supreme Court Rule 27.26, V.A.M.R., *Crosswhite v. State*, 426 S.W.2d 67, 70[1] (Mo.1968); *Johnson v. State*, 516 S.W.2d 500, 501[3] (Mo. App.1974), and "we recognize that the trial court had the right to reject testimony on behalf of the movant, even though there was no contrary evidence offered at the hearing." *Shoemake v. State*, 462 S.W.2d 772, 775[3] (Mo.banc 1971).

In post-conviction proceedings the standard for judging the adequacy of legal service rendered is "to determine in each case whether appellant was deprived of a fair trial by conduct of counsel," *Johnson v. State*, 516 S.W.2d 500, 501[2] (Mo.App. 1974); *Thomas v. State*, 512 S.W.2d 116, 121–2[1] (Mo.banc 1974), and "[t]here is no hard and fast rule applicable in every case." *Smith v. State*, 518 S.W.2d 155, 157[2] (Mo. App.1974); *Foster v. State*, 502 S.W.2d 436, 438 (Mo.App.1973).

Appellant condemns trial counsel's investigation as insufficient to permit proper presentation of available defenses, citing *McQueen v. State*, 475 S.W.2d 111 (Mo.banc (1971). At the outset we note defense counsel was not called at the evidentiary hearing and we are thus without direct testimony as to the extent of his investigation or preparation. Significantly appellant concedes "that the trial, per se, was conducted in an effective manner" but maintains there was *no* investigation, a situation he claims (1) bespeaks ineffective assistance of counsel as a matter of law, and (2) shifts the burden of going forward with the evidence to the state. Neither proposition is supported by applicable law.

In *McQueen* cited by appellant defense counsel's failure to interview witnesses endorsed by the state was held *not* to have "prevented the defendant in this case from having a fair trial," *supra* at 112. The court found there was no proof that counsel's preparation was inadequate simply because he failed to interview the witnesses named and the court further waived aside appellant's argument that counsel's investigation of state's witnesses prior to trial might have permitted a stronger defense and his failure to so do constituted ineffective assistance, as "totally speculative." This is not to say that failure to investigate is a circumstance of little consequence but rather, standing alone does not establish ineffective assistance of counsel as a matter of law.

As to appellant's novel argument that the burden of going forward with the evidence shifted to the state, we find no authority and none is cited which supports his position. However concerning the "burden of proof," it has been stated: "[t]he burden of proof to establish the oft-levelled claimed of ineffective assistance of counsel

in postconviction proceedings is on the movant and such onus is not met unless it is clearly demonstrated that the acts or omissions of counsel went beyond errors of judgment or trial strategy and were of such character as to result in a substantial deprivation of the right to a fair trial." *Crow v. State,* 514 S.W.2d 13, 14[2] (Mo.App.1974). Further appellant's argument appears contrary to the intent of Rule 27.26(f) providing the prisoner has the burden of establishing his grounds for relief by a preponderance of the evidence. Appellant's contention fails for the additional reason the record factually belies his charge of inadequate investigation or a lack of preparation. The theory of defense was alibi, that appellant was elsewhere and the murder committed by one Larry Tucker. Defense counsel called five witnesses: the defendant, his mother and cousin, who alone could substantiate his alibi, the officer who arrested Larry Tucker for questioning in connection with the murder, and Queen Esther Brown and Deborah Jackson, who both testified hearing Larry Tucker admit the killing.

█ The transcript in the criminal cause discloses a well-prepared, carefully-organized and vigorously-presented defense. The only other witnesses now named by appellant as available but not called were Queen Esther Brown's mother and two brothers "Sonny" and "Junebug," whose testimony would at best have been cumulative on the issue of alibi and Larry Tucker's admissions. The value of their contribution to the defense appears highly speculative. Appellant also asserts the possibility that other unnamed witnesses could have supported his case but does not indicate the nature of their testimony and offers no proof they were *not* interviewed other than ambiguous assertions to that effect. Significantly appellant concedes there could have been reasons for not calling such witnesses. See *Jackson v. State,* 510 S.W.2d 707, 708[2] (Mo.App.1974). An attorney has "the right to exercise his professional judgment regarding leads suggested by the defendant," *McNamara v. State,* 502 S.W.2d 306, 308[1] (Mo.1973). "A movant who contends inadequate investigation by counsel has the burden of showing that a fuller investigation would have uncovered evidence which would have improved his trial position and that he was deprived of evidence of substance by such neglect to his prejudice." *Fritz v. State,* 524 S.W.2d 197, 199[2] (Mo.App.1975); *Monteer v. State,* 506 S.W.2d 25, 28[8] (Mo.App.1974). Which witnesses to call and how best to defend, are matters of strategy and tactics. Counsel's actions will not lightly be judged ineffective because of trial error in such matters. See *Cook v. State,* 511 S.W.2d 877, 882[8–10] (Mo.App.1974).

█ Finally, appellant complains counsel conferred with him only twice, insisting this prevented calling other witnesses. However, those appellant now suggests as alibi witnesses, Queen Esther Brown and Deborah Jackson, were in fact called and testified. As noted above, others whom counsel may or may not have interviewed involved only cumulative testimony and nothing reflects appellant's prior dissatisfaction with counsel's service. By its findings the court made clear appellant's unsupported testimony was less than credible and in such cases "the trial court is not required to believe movant's testimony." *State v. Hurtt,* 509 S.W.2d 14, 16[5] (Mo.1974). This record amply warrants the trial court's finding "that petitioner was ably, conscientiously and competently represented . . ." and that "petitioner has failed to prove he was denied effective assistance of counsel." Appellant's point is without merit.

█ Appellant's next point, that the conviction was procured by knowing use of perjured testimony, stems from testimony of state's witness Jerome Nelson and inconsistent extrajudicial statements attributed to him in a police report.

At trial Nelson testified appellant shot the victim three times in an attempt to rob him of his dice game winnings then ran through a gangway east of the house where the dice game occurred, apparently to a car that drove away from the scene. On cross-examination inquiry was made of items appearing in the police report, conflicting

with his direct testimony. Nelson denied having made such contradictory statements and since the report had been excluded,[1] the defense then sought to impeach the witness by testimony of officers who took the statement. Confusion abounds in the testimony of the officers involved[2] but this appears more a question of credibility than intentional use of perjured testimony.

"To obtain a new trial because of perjured testimony, a defendant should show that the testimony at the criminal trial was deliberately false and known to be false; that the prosecution used the testimony knowing it to be false; and the conviction was obtained on account of the perjured testimony." *Duncan v. State,* 520 S.W.2d 123, 124[1] (Mo.App.1975); *Tyler v. State,* 501 S.W.2d 189, 191[2] (Mo.App.1973); *State v. Harris,* 428 S.W.2d 497, 502[11] (Mo.1968). Appellant fails to meet these tests. Only Jerome Nelson's testimony had any part in securing appellant's conviction. Lt. Brown's testimony merely related to the taking of Jerome Nelson's statement and the preparation of the police report. Appellant points to the conflicting portions of the report as proof that the testimony at trial was perjured. This argument ignores the unreliability of such reports. "[A] police report contains statements written down by the reporting officer of what other officers have informed him a certain person said in regard to certain facts. It is a condensation, not a verbatim transcript. It contains much hearsay and interpretation by the various officers whose contributions make up the report. It is seldom supported by sworn statements. Such a report cannot even be used to impeach a witness . . ." *Duncan v. State,* 520 S.W.2d 123, 125[2]

(Mo.App.1975); see also appellant's criminal appeal, *State v. Williams,* 473 S.W.2d 388, 390[3, 4] (Mo.1971). It certainly does not establish that testimony in conflict with the report is false. Thus appellant has failed to establish that the trial testimony was *false, Tyler v. State,* 501 S.W.2d 189, 191[3, 4] (Mo.App.1973), and failed to show the prosecutor *knew* false testimony would be given at trial. In addition, three witnesses corroborated Jerome Nelson's trial testimony of the crime which lends credence to the state's position that the prosecution had reason to believe Nelson was truthful when testifying. We rule the point against appellant and the judgment is affirmed.

WEIER, P. J., and DOWD, J., concur.

---

1. The police report was offered to impeach Nelson but excluded as too unreliable. This trial court ruling was affirmed in the criminal appeal. See *State v. Williams,* 473 S.W.2d 388, 390[2–4] (Mo.1971).

2. It is uncertain how or who prepared the police report of Nelson's purported statement. Some of the confusion and conflicting testimony includes: In the criminal trial Cpl. Schmidt denied interviewing Nelson and stated that Lt. (then Sgt.) Brown did it. Lt. Brown testified that he interviewed Nelson and denied that Nelson had mentioned three armed men even after reading the police report on the stand. Lt. Brown denied preparing that part of the police report involving the three gunmen. Cpl. Schmidt was deceased at the time of the evidentiary hearing but Sgt. Dwyer testified there was no indication how many officers assisted in preparing the report. Lt. Brown testified that he sat in on Nelson's interview and the report was substantially the same as he remembers that given by Nelson but Cpl. Schmidt, not he, conducted the interview.