Roger Lee McQUEEN, Petitioner,

v.

Harold R. SWENSON, Warden, Missouri
State Penitentiary, Respondent.

No. 72 C 653(3).

United States District Court,
E. D. Missouri, E. D.

Aug. 16, 1976.

Michael A. Gross, Gross & Goodman, St. Louis, Mo., for petitioner.

John C. Danforth, Atty. Gen., State of Missouri, Neil MacFarlane, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM

WANGELIN, District Judge.

Once again Roger Lee McQueen is before this Court on his application for federal habeas corpus from imprisonment growing out of a Missouri State Court conviction, wherein he received a life sentence for murder. The facts surrounding this case have been previously set out in detail in the state court review *McQueen v. Missouri*, 475 S.W.2d 111 (Mo.1971), and this Court's file number 72 C 653(3), and in the Eighth Circuit Court of Appeal's observations and rulings contained in *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974), and again at 527 F.2d 579 (8th Cir. 1975), and more recently in its order of July 14, 1976, 537 F.2d 976.

This Court has been placed in the difficult role of determining whether or not the legal assistance rendered McQueen at the time of his state court trial which assistance has been declared to be ineffective by the appellate court, has prejudiced McQueen's defense. This Court now enters its express finding that trial counsel's errors have not prejudiced McQueen's state court trial. The reasons for this finding follow.

Assuming, as the Court of Appeals has found, that McQueen was rendered ineffective assistance of counsel at the time of his state trial, one pauses to inquire as to what assistance of any kind would have helped any defendant faced with the facts that surrounded McQueen.

To us, it presents somewhat of an incongruity to decide that McQueen had ineffective assistance of counsel and yet, said ineffective assistance of counsel did not prejudice his right to a fair trial.

■ This Court has been assisted in its determination of whether or not McQueen had ineffective assistance of counsel; the Court of Appeals has already decided that he has had such faulty counsel. Therefore, proceeding with the presumption that ineffective counsel did exist, the petitioner was given the burden of showing the existence of admissible evidence which his counsel could have uncovered, which would have proven helpful to the defendant in his original trial. Then, if this showing were made, we were bound to award habeas corpus, unless we believed that the omission of such evidence was harmless beyond a reasonable doubt. *McQueen v. Swenson*, 498 F.2d 207, 218 (8th Cir. 1974). Speaking frankly, this Court does not believe that either of these prerequisites existed and now makes its finding accordingly. To orchestrate these findings with the tune of existing case law is not an easy undertaking. We are asked to engage in the speculation of what a jury might have done if it had heard certain evidence which might have been developed if McQueen's counsel had interviewed certain witnesses. See Judge Henley's dissenting observations in *Thomas v. Wyrick*, 535 F.2d 407, p. 420.

■ This Court was not impressed by McQueen's developments in the Federal District Court evidentiary hearing. McQueen developed the following to assist his theory of self defense. The shoe horn allegedly used by the deceased in his purported attack on McQueen, turned out to be a flimsy, metallic, combination shoe horn and hair brush, which "weapon" was hardly needed by an alleged assailant some sixty-five pounds heavier than his target. It had no "carving knife handle" as alleged by petitioner in his state court trial. The police report introduced at the hearing presented nothing that this Court found startlingly novel or helpful to defense. The coroner's report, introduced by petitioner, impressed this Court as being actually detrimental to petitioner's cause. It revealed that the death of George Francis, the homicide victim of McQueen, was caused by three thirty-eight caliber gunshot wounds, any one of which could have been fatal. While we realize that a defender is not obliged to nicely gauge the force necessary to repel his assailant, it would appear that at least one of these wounds and maybe two, were unnecessary, unless the user of the firing gun was bent on murder.

Counsel for McQueen readily admitted that he had not interviewed certain other witnesses, nor did he visit the scene of the crime. McQueen's trial counsel is known by this Court to be a skilled criminal practitioner; he is no neophyte to criminal practice. He indicated to this Court that he was fearful of being accused of tampering with state witnesses by conducting what he considered unimportant interviews. While it might not be condoned by many trial observers, it is somewhat common practice for knowledgeable, skilled, and busy criminal practitioners not to take state criminal witnesses' depositions. Their theory is that the state prosecutor, shouldering some five to fifteen cases each Monday morning as he approaches docket call, is not totally prepared on any one. For the defense counsel to take depositions and visit the scene of the crime with the prosecutor or his representative, is to assist the prosecutor in his preparation. The average skilled criminal defense counsel would rather wait for the prosecutor to put on his case, and then hopefully punch holes in developed testimony. Most don't even hazard an opening statement until after the state case is complete. In this way, they are not committed to any particular theory of defense.

This well might be considered a dangerous practice, but it has many proponents.

"Monday morning quarterbacking" of trial tactics is a popular legal pastime. We are convinced that most hindsight observations have been considered by experienced trial counsel. For some reason, best known to trial counsel during the heat of battle, they were rejected or deemed dangerous.

We have reviewed recent cases concerning hindsight observations of trial tactics, as follows:

*Entrekin v. United States*, 508 F.2d 1328 (8th Cir. 1974), citing *Houser v. United States*, 508 F.2d 509 (8th Cir. 1974), stated, "His claim of inadequate representation by counsel fails to establish a basis for collateral attack. More than a disagreement with tactical decisions of trial counsel must be shown."

*Whitney v. United States*, 513 F.2d 326 (8th Cir. 1974), "We will not now pass judgment on deliberate decisions by counsel. The allegations . . . are totally rebutted by the trial transcript in which the preparation and skill of both defense attorneys is readily apparent."

*Johnson v. United States*, 506 F.2d 640 (8th Cir. 1974), "Trial tactics are often hard decisions made in the tempo of the adversary proceeding and, once made, are not subject to rejection in the event one misfires. . . . The term 'effective,' in its most general application, describes something which ultimately achieves a desired result. With reference to professional representation in criminal cases, that might be interpreted to mean achieving only outright acquittal of the defendant on the charges without regard to the weight and strength of the evidence adduced. . . . The professional standard could be said to include the responsibility to insure that the client is tried according to the applicable rules of evidence and practice and to urge such arguments on a client's behalf as are indicated by the evidence, or the lack of evidence, adduced."

*Schleicher v. Wyrick*, 529 F.2d 906 (8th Cir. 1976), "We see the claim made here as the second-guessing by present counsel of competent counsel who exercised his best judgment on behalf of a guilty client."

*Franklin v. Wyrick*, 529 F.2d 79 (8th Cir. 1976), " * * * [I]n choosing trial tactics 'the exercise of the defense attorney's professional judgment should not be second-guessed by hindsight * * *' . . . *United States v. Hager*, supra, 505 F.2d 737 at 739 (8 Cir.) quoting from, *McQueen v. Swenson*, supra, 498 F.2d at 216; see also *Johnson v. United States*, supra, 506 F.2d at 645. . . . Counsel's conduct was, in our view, a calculated trial tactic. The variance between the opening remarks of the state and the coroner's testimony could well have shattered the prosecution's credibility throughout the trial. Even assuming, arguendo, that trial counsel did not read the coroner's report before trial, we fail to understand how petitioner was prejudiced by such failure. The prosecution admitted in closing argument that, in light of the coroner's testimony, he erred in initially stating that the bullet entered the back of the victim's head. Thus the correct point of entry was before the jury for resolution of the self-defense issue."

The transcript of the record in this case has convinced this Court that McQueen visited the deceased's apartment bent on a mission of crime. While his primary objective might have been limited to the procurement of drugs, we are convinced that McQueen was prepared to and indeed committed robbery and murder incidental to his drug search. This is so often the accompanying pattern of drug traffic.

McQueen's ultimate arrest, while in flight from the scene of the murder, after kidnapping one James Fisk in Kentucky at the point of a revolver, his being stopped at a roadblock by Kentucky police, after what could have been a tragic shoot out, the fact that McQueen was in possession of the Missouri murder weapon, and his victim's expensive watch, convince us and it did his trial counsel, that his only trial tactic was one of self defense. But then, McQueen's failure to call the police at the time of the crime, which a true self defender does, the possession of the murder weapon in Kentucky, and also the possession of the deceased's valuable watch, made self defense

an unbelievable theory to the trial jury. As a passing thought, we might here observe that perhaps McQueen's counsel's principal manifestation of ineffective assistance was that he neglected to persuade McQueen to plead guilty to the crime involved.

Therefore, this Court, acting upon the mandate of the United States Court of Appeals for the Eighth Circuit as ordered on July 14, 1976, makes an express finding that the ineffective assistance of counsel rendered petitioner, did not prejudice his right to a fair trial, and more certainly, did not reach constitutional inadequacy. Wherefore, this Court enters its judgment accordingly, and dismisses McQueen's application for federal habeas corpus without further proceeding.

The Court adopts this memorandum opinion as its finding of fact and conclusion of law and the Clerk will prepare the Order in accordance with the Court's finding herein.