Roger Lee McQUEEN, Appellant,

v.

Harold R. SWENSON, Warden, Missouri State Penitentiary, Appellee.

No. 76–1926.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1977.

Decided Aug. 23, 1977.

Rehearing Denied Sept. 26, 1977.

Michael A. Gross, Clayton, Mo., argued and on brief for appellant.

Neil MacFarlane, Asst. Atty. Gen. (argued), and John D. Ashcroft, Atty. Gen., Jefferson City, Mo., on brief, for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

In *McQueen v. Swenson*, 498 F.2d 207 (8th Cir. 1974) (*McQueen I*), we held that appellant McQueen, a state prisoner, had been denied the effective assistance of counsel constitutionally required because of the failure of his counsel to make an adequate investigation prior to appellant's trial for murder.[1] We remanded for a determi-

---

1. Appellant was found guilty by a jury of second-degree murder and sentenced to life imprisonment. The history of appellant's appeals in state proceedings is set out in *McQueen I*, 498 F.2d at 208 n.1.

nation of whether that failure prejudiced appellant's defense to the extent that his conviction must be vacated. The district court, after conducting an evidentiary hearing, ultimately found that "the ineffective assistance of counsel rendered petitioner, did not prejudice his right to a fair trial," and ordered the dismissal of McQueen's application for a writ. We conclude that the district court's finding is clearly erroneous and reverse.

After conducting the evidentiary hearing, the district court initially remanded this case to the Supreme Court of Missouri with the suggestion that the original Missouri trial judge, then retired, be appointed to serve as a special master to review the entire state and federal record and make findings with respect to whether defendant was denied a fair trial, these findings to be reviewable on appeal if unacceptable to either party.[2]

McQueen thereafter made application for writ of mandamus to compel the district court to render a final determination of his pending application for a writ of habeas corpus. This court denied the petition for writ of mandamus holding it was within the discretion of the district court to send this case back to the state court for an initial determination of whether lack of investigation was harmless. *United States ex rel. McQueen v. Wangelin*, 527 F.2d 579 (8th Cir. 1975) (*McQueen II*). Subsequently, the district court on January 14, 1976, entered the following order:

It is now the directive of this Court that the State of Missouri commence appropriate proceedings to ascertain whether or not McQueen's trial counsel was ineffective,[3] and whether or not said ineffectiveness, if same existed, denied petitioner a fair trial. If the State of Missouri fails to make this inquiry and come

to conclusion concerning this allegation, within six months from the date of this Order, then the judgment and conviction of petitioner is vacated.

Respondent-appellee Swenson appealed from the above order. This court then ordered the district court to make factual findings based upon the evidence presented at the January 20, 1975, hearing and enter an appropriate order.

The district court on August 16, 1976, filed the memorandum which is the subject of the instant appeal. In substance the court found that appellant had failed to establish the existence of admissible evidence which his counsel could have uncovered, which would have proven helpful to the defendant in his original trial. More specifically, that:

■ The *shoe horn* allegedly used by the deceased in his purported attack on McQueen, turned out to be a flimsy, metallic, combination shoe horn and hair brush, which "weapon" was hardly needed by an alleged assailant some sixty-five pounds heavier than his target. It had no "carving knife handle" as alleged by petitioner in his state court trial. [2] The *police report* introduced at the hearing presented nothing that this Court found startlingly novel or helpful to defense. [3] The *coroner's report*, introduced by petitioner, impressed this Court as being actually detrimental to petitioner's cause. It revealed that the death of George Francis, the homicide victim of McQueen, was caused by three thirty-eight caliber gunshot wounds, any one of which could have been fatal.

*McQueen v. Swenson*, 425 F.Supp. 373, 374 (E.D.Mo.1976) (emphasis added).

In addition the district court discussed the reputation of McQueen's trial counsel as a skilled criminal practitioner; counsel's ad-

---

2. This procedure for review was previously suggested by a dissenting judge of the Supreme Court of Missouri in *McQueen v. State*, 475 S.W.2d 111, 119–20 (Mo.1971) (Donnelly, J., dissenting).

3. We note that this issue was foreclosed by *McQueen I*, 498 F.2d 207, which held that McQueen had been denied the effective assistance of counsel.

mitted failure to interview state witnesses because he was fearful of being accused of "tampering;" the somewhat common practice for skilled practitioners not to take state criminal witnesses' depositions; trial tactics in waiting for the prosecutor to put on his case and not alerting him as to the defense; and finally, the strength of the state's case against McQueen and the weakness of McQueen's defense. Following the foregoing discussion the district court "makes an express finding that the ineffective assistance of counsel rendered petitioner, did not prejudice his right to a fair trial, and more certainly, did not reach constitutional inadequacy." *McQueen v. Swenson, supra,* 425 F.Supp. at 376.

■ In *McQueen I* we stated, "In the circumstances of this case, we hold the lack of pretrial investigation amounts to ineffective assistance of counsel." 498 F.2d at 213. That issue was closed in this case. We held, however, that a second determination must be made as to whether the failure to investigate prejudiced McQueen's defense. *See* discussion, 498 F.2d 218–20.[4] We remanded to the district court

> for a hearing on the issue of whether or not prejudice flowed from the failure of counsel to make a reasonable investigation of this case. The petitioner, as we have already stated, must shoulder the initial burden of showing either prejudice or, alternatively, changed circumstances which would justify placing on the state the burden of proving the absence of prejudice.

498 F.2d at 220. We further stated:

> We ought not to intervene in the criminal process unless and until it can be shown that the alleged error itself prejudiced the petitioner in obtaining a fair trial. But this is *not* to say that, on remand, petitioner must prove his innocence even by so much as a preponderance of the

evidence; nor should we be understood to suggest that the Court may trespass upon what properly would have been the jury's province of weighing the truth or falsity of this evidence at the original trial. What we are saying is that, here, the petitioner must shoulder an initial burden of showing the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to the defendant either on cross-examination or in his case-in-chief at the original trial. Once this showing is made, a new trial is warranted unless the court is able to declare a belief that the omission of such evidence was harmless beyond a reasonable doubt. *Cf. Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

498 F.2d at 220.

■ We are satisfied from our review of the testimony and exhibits produced at the hearing conducted by the district court pursuant to our remand that its findings that errors of counsel were not prejudicial are clearly erroneous. *Rice v. Wolff,* 513 F.2d 1280, 1293 (8th Cir. 1975), *reversed on other grounds sub nom., Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Parnell v. Wainwright,* 464 F.2d 735, 737 (5th Cir. 1972); *Shultz v. State of Nebraska,* 353 F.2d 81, 82 (8th Cir. 1965).

A brief review of the specific items mentioned by the district court will demonstrate the existence of admissible evidence which appellant's counsel could have uncovered by reasonable investigation and which would have proved helpful to McQueen either on cross-examination or in his case-in-chief.

*Shoehorn*

McQueen testified at trial that he shot the deceased, George Francis, as the latter

---

4. We note that since our holding in *McQueen I*, 498 F.2d 207, the Ninth Circuit has joined the Sixth Circuit in holding that once ineffective assistance of counsel has been established harmless error tests do not apply. *Cooper v. Fitzharris,* 551 F.2d 1162, 1164–65 (9th Cir. 1977); *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974). We have continued to require a showing of prejudice where counsel's failure to perform an essential duty has been established. *United States v. Easter,* 539 F.2d 663, 666 (8th Cir. 1976); *Thomas v. Wyrick,* 535 F.2d 407, 414 (8th Cir. 1976).

made an assault on him with a long metal shoehorn approximately two feet in overall length. Several police officers who had investigated the scene at the deceased's apartment testified in rebuttal that in searching the area they found no such shoehorn. The importance of this rebuttal testimony was recognized by us in *McQueen I*, 498 F.2d at 210. *See also McQueen v. State of Missouri*, 475 S.W.2d 111, 120–24 (Mo. 1971) (Seiler, J., dissenting). Appellee concedes the shoehorn would have been discovered by a reasonable investigation by appellant's defense counsel,[5] but contends it would not have been helpful because (1) the shoehorn produced did not fit the description given by appellant and thus was inadmissible; (2) even if admitted, it was cumulative of appellant's version and would not have affected the jury's decision; and (3) most importantly, the evidence indicates the shoehorn was hanging on the door at all times.

The shoehorn produced is substantially identical, except for the "carving knife handle," to the description given by appellant at his trial. It is about two feet long, has a shoehorn on one end, and is constructed primarily of metal. Although not a lethal weapon in itself, in the hands of the deceased it could have been a formidable weapon and thus is corroborative of appellant's trial testimony. We cannot agree that the omission of this evidence was harmless beyond a reasonable doubt.

*Police report*

The district court found nothing in the police report "startlingly novel or helpful to the defense." *McQueen v. Swenson, supra,* 425 F.Supp. at 374.[6] We cannot agree.

The police report indicates that Donald Cole, a homosexual partner of the deceased for two years who spent the night preceding the murder with deceased at the apartment, left the next morning. He related that he could not say whether another white visitor who arrived during the night remained in the apartment when Cole left. He stated that he and deceased had not been drinking that night but could not account for the nearly empty bottle of vodka in the bedroom. As a frequent visitor he undoubtedly knew about the shoehorn and possibly the identity or at least a description of the visitor. He was also subject to impeachment because of conflicts with his trial testimony.

More importantly, the police report indicated that Conrad Zoeller originally told the police that his car had been stolen approximately two months prior to the homicide, at which time some of his shirts were missing. Zoeller's explanation at trial was that some of his shirts were taken from his sister's (Mary Zoeller's) car. The state's theory at trial was that appellant stole the murder weapon from Mary Zoeller's car and used Zoeller's shirts as corroboration. One shirt was in appellant's possession and the other in the apartment. *See McQueen I,* 498 F.2d at 209. Appellant had told his counsel that the dentist, Conrad Zoeller, and deceased were acquainted. If Zoeller frequented deceased's apartment it may well have been that he left the weapon there. *See McQueen v. State, supra,* 475 S.W.2d at 122. It can be argued that this is speculation but attorney Brown after being informed by

---

5. The parties stipulated that the victim's aunt, if called would testify that her residence was the same as that of the deceased, and that the day before the shooting the shoehorn was hanging on the back of a door in the victim's apartment, and that when she returned a few days later the shoehorn again was on the back of the door. It was also argued that the deceased's mother would testify in a similar fashion. Appellant's trial attorney, Hale Brown, testified that appellant gave him the name of a woman to call about the shoehorn and that he had called but the person was reluctant to talk and "that was the end of it."

6. Appellee raises a question as to whether the various police reports attached to the coroner's report up to a few days before trial were available before trial. The district court made no finding with respect to the issue of availability. The evidence indicates that several police reports were included in the coroner's file, each police report showing on the face of it that the coroner was on the distribution list. The coroner's file was available for inspection by appellant's counsel but he made no attempt to examine it before trial.

appellant of Zoeller's acquaintanceship with deceased, *McQueen I,* 498 F.2d at 211, could have obtained information that would have made further inquiry fruitful. Instead at trial when Zoeller denied acquaintanceship with deceased that ended attorney Brown's inquiry in this regard.

The police report further revealed that Christian Massey, who was deceased's stepbrother and discovered the body at approximately 8:00 p. m. on October 23, originally stated to the police that he had seen deceased that morning about 8:00 a. m. in his mother's apartment (just below deceased's apartment). Massey later stated that he had not seen deceased at all that day before discovering the body. He gave no explanation for the change in his statement. Donald Cole and Christian Massey were not available for the remand hearing.

*Coroner's report*

That part of the coroner's report which included the pathologist's examination indicating three bullet wounds were found in the body contained nothing new or helpful.

We recognize, as did the district court, that as a matter of strategy it was perfectly proper for appellant's counsel to concentrate on the state's lack of eyewitnesses and its doubtful ability to make a prima facie case. We suggest that some investigation revealing the existence of the shoehorn and the questionable circumstances with respect to Dr. Zoeller's shirts being in the apartment and the possibility of the homicide gun being there would have lessened the strength of the state's case-in-chief. In any event, attorney Brown testified that he knew there was a possibility that it would be necessary for appellant to testify and rely on his claimed self-defense. Some investigation, particularly with respect to the matters revealed to counsel by appellant, would have revealed the existence of admissible evidence which could have been uncovered by reasonable investigation and which would have proved helpful to appellant either on cross-examination or in his case-in-chief. The hearing on our remand confirms this. We cannot say that the omission of

such evidence was harmless beyond a reasonable doubt. Appellant's proof of prejudice should not be defeated by the district court's low opinion of the credibility of relevant and admissible testimony. This is for the jury. *Thomas v. Wyrick, supra,* 535 F.2d 407, 417.

We therefore reverse and remand this case and direct the district court to issue the writ of habeas corpus discharging appellant, subject to the state, if it wishes to do so, to try him on the indictment here involved within 90 days of the issuance of our mandate.

Reversed and remanded.

HENLEY, Circuit Judge, dissenting.

I dissent and would affirm on the ground that critical findings of the district court are not clearly erroneous.