**Jack NOBLE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 12856.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 1, 1983.

Motion for Rehearing or Transfer Denied
Feb. 22, 1983.

Application to Transfer Denied
March 29, 1983.

Susanna Jones, Legal Aid of Western Missouri, Joplin, for appellant.

John Ashcroft, Atty. Gen., Margaret Jones, Asst. Atty. Gen., Jefferson City, for respondent.

HOGAN, Judge.

In April 1977, a jury found Jack Lee Noble guilty of robbery in the first degree as defined and denounced by § 560.120, RSMo 1969, now repealed, but found itself unable to agree on a punishment. The trial court accordingly assessed appellant's punishment at imprisonment for a term of 50 years, as authorized by § 560.135, RSMo (Supp.1975), now repealed, and former Rule 27.03. On appeal this court affirmed the judgment. *State v. Noble,* 591 S.W.2d 201 (Mo.App.1979). Appellant thereafter sought postconviction relief under the provisions of Mo.R.Crim.P. 27.26, asserting he was denied the effective assistance of counsel upon the trial of the original criminal action. After a hearing, the trial court denied relief. Noble appeals.

■ There is no doubt that a criminal appellant's Sixth Amendment right to counsel includes the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, n. 14, 25 L.Ed.2d 763, 773, n. 14 (1970). This right was recognized by former Rule 29.01, in effect when the appellant was tried, and the standard by which effectiveness of counsel is to be measured in this proceeding was set forth in *Seales v. State,* 580 S.W.2d 733, 735[3] (Mo. banc 1979). We must therefore determine whether trial counsel's performance conformed to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances.

■ The appellant asserts he was prejudiced by counsel's failure to interview and call a witness who would have corroborated another witness who testified that appellant was elsewhere when the offense charged was committed. Upon trial, the appellant testified he had not gone to the convenience store which was robbed, as follows:

"At the Shop 'N Go Market, no. We went and bought food right after I got off work, ate supper, and went to a new store that they had opened then, it was a cut-rate store. *I am not real familiar with the streets of Joplin,* but it is on beyond Schifferdecker some distance *on where they advertise you to join a club for $2.00 a month and you can trade there at their prices.*" (Our emphasis.)

At the postconviction hearing, appellant's estranged wife testified that had she been called as a witness she would have testified that at or shortly prior to the robbery:

"We were looking for this street *and I didn't know for sure where it was at and we turned and it was a dead end street and I seen this car parked at the side of the road, this man standing by the side of it.* We went down to the corner and turned around and stopped on the opposite side of the street. [A female companion] went over to the man to ask him the street that we were looking for and I recognized the man as [the appellant] standing beside the car with his headlights on."

So, in essence, appellant premises ineffective assistance of counsel upon failure to call an alibi witness who was admittedly lost when she saw him. We are unable to perceive how the estranged wife's testimony would establish appellant was "on beyond Schifferdecker some distance on where they advertise you to join a club for $2.00 a month," but the trial court found that counsel "may well have determined that this witness was not of sufficient credibility to call as a witness" and we most cordially agree.

The appellant further asserts that trial counsel failed to interview some or all of the State's witnesses prior to trial, thereby rendering ineffective any attempted cross-examination or rebuttal of their testimony. The trial court found as a fact that the parts of the transcript relied on did not establish a failure to interview all the State's witnesses. Our review of the trial court's finding generates no firm belief that it is wrong, or that the court erroneously declared the law or misapplied the law to the facts before it. The point is based on an incident which occurred at the beginning of the trial. Having filed an information on March 17, 1977, the prosecuting attorney filed an amended information on April 29, having given notice the previous day that

he intended to endorse the amended information by adding the names of a number of witnesses. Before the trial commenced, appellant's counsel addressed the court as follows:

"MR. HAMILTON: Your Honor, before we start, the State yesterday endorsed a witness—approximately twelve witnesses, my client has requested me to ask for a continuance in this matter.

[THE PROSECUTING ATTORNEY]: The witnesses were all witnesses within the police reports formerly furnished to Mr. Hamilton, and I believe all familiar to Mr. Hamilton.

THE COURT: Mr. Hamilton, are you saying the endorsements of any one of these witnesses, the fact that they are witnesses is a surprise to you?

MR. HAMILTON: Your Honor, *I cannot honestly say I am surprised by these witnesses.*

THE COURT: They are not witnesses that you had no knowledge about beforehand?

MR. HAMILTON: That's correct.

THE COURT: Have you in fact discussed or talked to any of these witnesses?

MR. HAMILTON: *Several of them, I have read statements.*

THE COURT: Unless you can show the Court that your client would be harmed by the continued trial of this case or going to trial today, I can see no reason to grant a continuance for that reason." (Our emphasis.)

Asserting very expansively that counsel's failure to interview all the State's witnesses made it impossible to cross-examine those witnesses, appellant cites us to *McQueen v. Swenson,* 498 F.2d 207 (8th Cir.1974), a case in which hastily appointed defense counsel had made no effort whatever to investigate the State's case. The United States Court of Appeals for the Eighth Circuit found the appellant had been denied effective assistance of counsel. In a subsequent habeas corpus proceeding, that court found itself dissatisfied with the district court's action on remand, and ordered appellant discharged, subject to the State's right to re-try the appellant within 90 days. *McQueen v. Swenson,* 560 F.2d 959 (8th Cir.1977).

We have no such situation here. The appellant draws the conclusion that counsel made no investigation on the basis of counsel's statement italicized above, which read "Several of them, I have read statements." This conclusory allegation vividly demonstrates the fallaciousness inherent in drawing sweeping conclusions from bits or fragments of a record, taken in isolation. See *Garrard v. State Dept. of Public Health & Welfare,* 375 S.W.2d 582, 592–593[25][26] (Mo.App.1964). Upon direct examination, the owner of the convenience store was asked what the robber wore at the time of the robbery. His answer was "All I saw, can say I really noticed was the ski mask." Cross-examination on this subject was as follows:

"Q. You said the man had on a ski mask?

A. Yes, sir.

Q. Could you describe the ski mask?

A. Dark blue ski mask and it had the eye holes just for the eyes.

Q. Did it have one or two holes?

A. I don't remember.

Q. Do you remember you testified on previous occasion about this matter?

A. Yes, sir, I do.

Q. Do you remember I asked you the same question?

A. Yes, sir, I believe you asked me and I said it was two holes.

Q. But now you are not sure?

A. No, sir."

This excerpt is only illustrative. The cross-examination of the State's witnesses, taken as a whole, indicates defense counsel was thoroughly familiar with the State's case. And, whatever the court may have indicated in *McQueen, supra,* its position has been clarified since in *Plant v. Wyrick,* 636 F.2d 188, 189 (8th Cir.1980), as follows:

"... [A]ppellant primarily relies on counsel's failure to interview potential witnesses as evidencing inadequate trial preparation. On numerous other occasions, this court has addressed this precise allegation, e.g., *Word v. United States,* supra, 604 F.2d [1127] at 1130 [8th Cir.

1979]; *Beran v. United States,* supra, 580 F.2d [324] at 327 [8th Cir.1978]; *Benson v. United States,* supra, 552 F.2d at [223] 225 [8th Cir.1977], and only rarely, under circumstances unlike those in the present case, have we found it sufficient to warrant a finding of ineffective counsel, *Morrow v. Parratt,* supra, 574 F.2d [411] at 413 [8th Cir.1978]; *Thomas v. Wyrick,* 535 F.2d 407, 413 (8th Cir.), cert. denied, 429 U.S. 868, 97 S.Ct. 178, 50 L.Ed.2d 148 (1976); *McQueen v. Swenson,* 498 F.2d 207, 216 (8th Cir.1974)."

This second point is wholly without merit.

The appellant further contends that the inventory search of an automobile, in which he fled from the scene of his crime to the place of his apprehension, was unlawful. On this premise, he asserts counsel was ineffective because no motion to suppress the evidence was made.

The appellant was apprehended after Joplin officers pursued him at high speed through the streets and alleys of Joplin. The automobile in which appellant fled was driven by one Linda Trease, appellant's paramour. During the pursuit, the appellant discarded: 1) a money bag taken from the convenience store; 2) a billfold taken in the robbery; 3) a ski mask, and 4) a blue steel .38 caliber revolver. At one point during the chase, one of the pursuing officers saw the appellant turn in the passenger's seat and point a handgun at him. The officer was aware that the robber was armed at the time the robbery took place.

Officer Wixon testified that after the appellant and his companion were arrested, he made a brief search for a weapon, but found none. Thereafter the vehicle was towed to the Joplin police station and was put in an "ambulance barn." After appellant and his paramour were charged, Joplin officers then searched the vehicle and found: a) a denim jacket, and b) a pair of plastic gloves. There is no contention that any closed container was searched or that the glove compartment was opened. The articles seized were lying in the seat and on the floor, on the "passenger's" side.

We view the search as nothing more than a contemporaneous search of the passenger compartment of an automobile, incident to the lawful custodial arrest of its occupants. Because the search was incident to a reasonable intrusion under the Fourth Amendment, the search was lawful. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981), reh. denied 453 U.S. 950, 102 S.Ct. 96, 69 L.Ed.2d 1036 (1981). As the search was lawful, counsel cannot now be faulted for his failure to move to suppress the evidence obtained as a result of the search.

The final point raised is a rescript and reargument of a point made on the original appeal. It has to do with the appellant's claim, made upon trial, that one Mahan had in fact committed the crime with which appellant was charged. Our postconviction proceeding cannot be used as a substitute for a second appeal, Mo.R. Crim.P. 27.26(b)(3) and we decline to reconsider that which has already been decided.

The judgment is affirmed.

MAUS, P.J., and PREWITT, J., concur.